STATE OF NORTH CAROLINA v. JAMES BRYAN CAMPBELL

No. 268A90

(Filed 17 July 1992)

**1. Criminal Law § 414 (NCI4th) — murder — closing arguments — only one defense counsel allowed to argue — error**

   A murder prosecution was remanded for a new trial where defendant requested that both of his attorneys be allowed to address the jury during the final closing argument in the guilt-innocence phase of the trial and the trial judge, while recognizing that the rule enunciated in *State v. Mitchell*,

321 N.C. 650, applied to the sentencing phase, was under the misconception that the rule did not apply to the guilt-innocence phase. N.C.G.S. § 84-14.

**Am Jur 2d, Homicide § 555.**

2. **Arson and Other Burnings § 6 (NCI4th) — murder and arson — victim dead before arson — continuous transaction**

The trial court did not err by submitting to the jury the charge of first degree arson where the undisputed medical evidence was that the victim was already dead from multiple blows to the head when defendant set the house on fire. A dwelling is "occupied" if the interval between the mortal blow and the arson is short and the murder and arson constitute parts of a continuous transaction. N.C.G.S. § 14-58.

**Am Jur 2d, Arson § 5.**

APPEAL as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by *Ferrell, J.*, at the 14 May 1990 Criminal Session of Superior Court, GRAHAM County. Defendant's motion to bypass the Court of Appeals as to additional judgment was allowed by the Supreme Court on 30 December 1991. Heard in the Supreme Court 11 May 1992.

*Lacy H. Thornburg, Attorney General, by Ellen B. Scouten, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Daniel R. Pollitt, Assistant Appellate Defender, for defendant-appellant.*

FRYE, Justice.

The State concedes that defendant James Bryan Campbell must receive a new trial on all charges because the trial court refused to allow both of his defense attorneys to argue during the final closing argument. N.C.G.S. § 84-14 (1985); *State v. Mitchell*, 321 N.C. 650, 365 S.E.2d 554 (1988). This opinion will therefore be limited to that issue and one other: whether to apply the continuous transaction doctrine to murder-arson cases.

I.

Defendant was indicted by a Graham County grand jury on 12 June 1989 for first-degree murder and assorted other crimes

STATE v. CAMPBELL

[332 N.C. 116 (1992)]

stemming from a one-day crime spree which left one man dead and another seriously injured. According to testimony at defendant's trial, defendant, his girlfriend Alice Crisp, his girlfriend's son Lamar Ledford, and Ledford's girlfriend Wendy Keller, came to North Carolina from Georgia in January or February 1989. In need of money, defendant asked Crisp for the name of someone to rob. Crisp supplied defendant with the name of fifty-nine-year-old Donald Allen, who lived near Robbinsville, North Carolina. On the evening of 18 March 1989, the two couples went to Allen's home, where they found Allen with his friend Tony Phillips. Shortly thereafter, defendant, Ledford, Crisp and Keller went to Phillips' home, also located on the outskirts of Robbinsville. After a period of drinking, dancing and socializing, defendant attacked Phillips with a hammer. Defendant then beat Phillips repeatedly with a baseball bat until the bat broke. Defendant took $13 from Phillips' pockets and searched the house in vain for valuables. Finally, defendant set the house on fire. Phillips managed to escape his burning home and testified at trial against defendant.

Defendant and his three companions then went back to Allen's house. Defendant ordered Ledford, then sixteen years old, to hit Allen in the head. Ledford hit Allen once in the back of the head with a crowbar. Defendant then struck Allen seven or eight times with the crowbar. Defendant and Ledford looked around the house for valuables and took a shotgun, jewelry and a pill bottle. Defendant then went into the kitchen, turned on the gas stove, poured gasoline around Allen's body, left a gasoline trail from the living room to the outside of the house and lit the trail. According to Ledford's testimony, "flames just blew out the door."

Dr. J.D. Butts, who performed the autopsy on Allen, testified that Allen died of blunt force trauma to the head. Butts testified that, in his opinion, Allen was dead when the fire was set.

Defendant did not testify. Defendant's two trial attorneys requested that they both be permitted to address the jury during the final closing argument. The trial judge denied defendant's request and allowed only one of defendant's attorneys to address the jury during the final closing argument in the guilt-innocence phase. The trial judge did allow both defense attorneys to address the jury during the final closing argument in the sentencing phase.

Defendant was convicted by a Graham County jury on 18 May 1990 of first-degree murder on the theory of premeditation and

STATE v. CAMPBELL

[332 N.C. 116 (1992)]

deliberation, assault with a deadly weapon with intent to kill inflicting serious bodily injury, two counts of first-degree arson, and two counts of robbery with a dangerous weapon. After a capital sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury recommended and the trial judge imposed the sentence of death for the first-degree murder conviction. Judge Ferrell then imposed two consecutive life sentences for the two first-degree arson convictions, two consecutive fourteen-year sentences for the two armed robbery convictions, and a consecutive nine-year sentence for the assault with a deadly weapon with intent to kill inflicting serious bodily injury conviction.

II.

[1] Section 84-14 of the North Carolina General Statutes provides, in pertinent part:

> [I]n capital felonies, the time of argument of counsel may not be limited otherwise than by consent, except that the court may limit the number of those who may address the jury to three counsel on each side.

N.C.G.S. § 84-14 (1985). In *State v. Mitchell*, 321 N.C. 650, 365 S.E.2d 554, the defendant was charged with first-degree murder and related noncapital offenses. The defendant requested that both his trial attorneys be allowed to address the jury during the final closing arguments in both the guilt-innocence and sentencing phases of his trial. The trial judge in *Mitchell* denied the request, allowing only one defense attorney to address the jury during each of the final closing arguments. After reviewing applicable case law, we said:

> Therefore, we hold that the trial court's refusal to permit both counsel to address the jury during defendant's final arguments constituted *prejudicial error per se* in both the guilt-innocence and sentencing phases. Such error in the guilt-innocence phase entitles the defendant to a new trial as to the capital felony. Further, the foregoing principles of law require us to hold in cases where a capital felony has been joined for trial with noncapital charges 'that the failure of the trial judge to allow both of defendant's counsel to make the closing argument was prejudicial error *in the noncapital as well as the capital charges.*' State v. Eury, 317 N.C. [511,] 518, 346 S.E.2d [447,] 451 [(1986)]. Therefore, the defendant

is also entitled to a new trial as to the noncapital charges in the present case.

*Id.* at 659, 365 S.E.2d at 559 (emphasis added); *see generally id.* at 656-60, 365 S.E.2d at 558-59.

As the State forthrightly concedes, *Mitchell* is indistinguishable from this case. Defendant requested that both his attorneys be allowed to address the jury during the final closing argument in the guilt-innocence phase of his trial. Although the trial judge recognized that the rule enunciated in *Mitchell* applied to the sentencing phase, he was under the misconception that the rule did not apply to the guilt-innocence phase. Therefore, as in *Mitchell*, this case must be remanded for a new trial on all charges.

## III.

[2] Because defendant must receive a new trial, it is not necessary to address each of his assignments of error; however, both sides urge this Court to decide whether the continuous transaction doctrine applies to murder-arson cases. We hold it does.

Section 14-58 of the North Carolina General Statutes provides:

There shall be two degrees of arson as defined at the common law. If the dwelling burned was occupied at the time of the burning, the offense is arson in the first degree and is punishable as a Class C felony. If the dwelling burned was unoccupied at the time of the burning, the offense is arson in the second degree and is punishable as a Class D felony.

N.C.G.S. § 14-58 (1986). A Class C felony carries a maximum prison sentence of fifty years or life imprisonment and a presumptive sentence of fifteen years; a Class D felony carries a maximum prison sentence of forty years and a presumptive sentence of twelve years. N.C.G.S. § 14-1.1(3), (4) (1986); N.C.G.S. § 15A-1340.4(f)(1), (2) (Supp. 1991). The difference in punishment based on occupancy of the dwelling stems from the legislative recognition that " 'the main purpose of common law arson is to protect against danger to those persons who might be in the dwelling house which is burned.' " *State v. Pigott*, 331 N.C. 199, 207, 415 S.E.2d 555, 560 (1992) (quoting *State v. Jones*, 296 N.C. 75, 77, 248 S.E.2d 858, 860 (1978) ). Thus, argues defendant, the trial judge erred by submitting to the jury the charge of first-degree arson as it related to Allen's house, because the undisputed medical evidence at trial

STATE v. CAMPBELL

[332 N.C. 116 (1992)]

was that Allen was already dead from multiple blows to the head when defendant set the house on fire. The State urges this Court to apply the continuous transaction doctrine to cases such as this and find that "a dwelling is 'occupied' for purposes of the arson statute when the interval between the mortal blow and the burning is short, and the murder and the arson constitute parts of a continuous transaction." We adopt the State's position.

Although this is the first time we have applied the continuous transaction doctrine to a murder-arson situation, we have applied the doctrine to murders involving armed robberies and sex offenses. *State v. Olson*, 330 N.C. 557, 411 S.E.2d 592 (1992) (armed robbery); *State v. Pakulski*, 319 N.C. 562, 356 S.E.2d 319 (1987) (armed robbery); *State v. Fields*, 315 N.C. 191, 337 S.E.2d 518 (1985) (armed robbery); *State v. Thomas*, 329 N.C. 423, 407 S.E.2d 141 (1991) (sex offense); *State v. Williams*, 308 N.C. 47, 301 S.E.2d 335 (sex offense), *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177 (1983). In *Olson*, we held that where the armed robbery and murder are part of a continuous transaction, "the temporal order of the threat or use of a dangerous weapon and the taking is immaterial." *Id.* at 566, 411 S.E.2d at 597. "To be found guilty of robbery with a dangerous weapon, the defendant's threatened use or use of a dangerous weapon must precede or be concomitant with the taking, *or be so joined by time and circumstances with the taking as to be part of one continuous transaction." Id.* (emphasis added); *see also Pakulski*, 319 N.C. at 572, 356 S.E.2d at 325 ("A homicide victim is still a 'person,' within the meaning of a robbery statute, when the interval between the fatal blow and the taking of property is short."); *Fields*, 315 N.C. at 202, 337 S.E.2d at 525 ("When . . . the death and the taking are so connected as to form a continuous chain of events, a taking from the body of the dead victim is a taking 'from the person.' "); *Williams*, 308 N.C. at 67, 301 S.E.2d at 348 ("It is immaterial," when deciding whether a defendant is guilty of first-degree murder in the perpetration of a sex offense, "whether the felony occurred prior to or immediately after the killing so long as it is part of a series of incidents which form one continuous transaction.").

To accept defendant's argument would be to say that he is less morally culpable — and hence deserves less punishment — because of his success in killing the victim prior to setting the house on fire. We do not believe this to be the intent of the legislature in enacting the arson statute, nor do we believe it to be sound

public policy. As we said in rejecting a similar argument in the murder-armed robbery context: "To accept defendant's argument would be to say that the use of force that leaves its victim alive to be dispossessed falls under N.C.G.S. 14-87 [armed robbery], whereas the use of force that leaves him dead puts the robber beyond the statute's reach." *Fields*, 315 N.C. at 201, 337 S.E.2d at 524. We rejected this argument in *Fields*; we reject it again today.

We hold that if the murder and arson are so joined by time and circumstances as to be part of one continuous transaction, the temporal order of the murder and arson is immaterial. Stated differently, for purposes of the arson statute, a dwelling is "occupied" if the interval between the mortal blow and the arson is short, and the murder and arson constitute parts of a continuous transaction. In this case, the undisputed evidence is that defendant beat Allen to death with a crowbar, searched the house for valuables and then set the house on fire. The murder and arson were clearly part of one continuous transaction. The trial court did not err, therefore, in submitting to the jury the charge of first-degree arson for the burning of Allen's house.

Defendant suggests that a decision by this Court contrary to his position would be inconsistent with the decision of the Court of Appeals in *State v. Ward*, 93 N.C. App. 682, 379 S.E.2d 251, *disc. rev. denied*, 325 N.C. 276, 384 S.E.2d 251 (1989). We disagree. In *Ward*, the defendant was convicted of second-degree murder and second-degree arson. *Id.* at 683, 379 S.E.2d at 252. The evidence at trial showed that Lori Mayse hired defendant to kill her husband. *Id.* After completing the job, defendant disposed of the victim's body in a trash dumpster and left the state for several days. *Id.* Mayse vacated the trailer where she had lived with her husband and disconnected the power. *Id.* at 686, 379 S.E.2d at 253. When defendant returned to North Carolina, Mayse paid him an additional $50 to burn the trailer. *Id.* at 683, 379 S.E.2d at 252.

The Court of Appeals agreed with defendant that his second-degree arson conviction must be reversed because the trailer was not "inhabited" at the time of the fire, as required by our common-law definition of arson.[1] *Id.* at 685-87, 379 S.E.2d at 253-54.

---

1. Section 14-58 divides arson into two degrees for purposes of punishment, but maintains the common-law definition of arson. N.C.G.S. § 14-58 (1986); *State v. Vickers*, 306 N.C. 90, 291 S.E.2d 599 (1982).

Although a temporary absence from a dwelling does not affect its status as inhabited, *see State v. Vickers,* 306 N.C. 90, 100, 291 S.E.2d 599, 606 (1982), the Court of Appeals held that the trailer was not inhabited at the time of the arson because the victim was dead and his wife had permanently vacated the premises. *Ward,* 93 N.C. App. at 686, 379 S.E.2d at 254.

This holding is not inconsistent with our decision in this case; in fact, it is consistent. In *Ward,* the victim had been dead for several days — and his body deposited in a trash dumpster — when the fire was set; Mayse, after disconnecting the power, had permanently vacated the premises. Only after the defendant returned from out of state and was paid an additional sum of money did he burn the trailer. On these facts, it cannot seriously be argued that the murder and arson were "so joined by time and circumstances as to be part of one continuous transaction." There is no reason why *Ward* and our decision today cannot peacefully coexist.

For the reasons stated in this opinion, this case is remanded to Superior Court, Graham County, for a new trial.

New trial.