STATE OF NORTH CAROLINA v. STEPHEN DAVID BROOKS

No. COA99-433

(Filed 6 June 2000)

## 1. Assault— deadly weapon—inflicting serious injury—separate charges—three bullet wounds

The trial court erred in denying defendant's motion to dismiss the second charge of assault with a deadly weapon inflicting serious injury because although the victim sustained three bullet wounds, there is no evidence of a distinct interruption in the original assault followed by a second assault.

**2. Kidnapping— indictment—facilitating commission of a felony**

The trial court committed plain error in allowing defendant to be convicted of first-degree kidnapping under the theory that defendant unlawfully restrained the victim and removed her from one place to another without her consent and for the purpose of facilitating the commission of a felony, because: (1) the victim willingly got into the van with defendant to run errands during her lunch hour and never tried to get away from defendant until after he shot her; (2) the indictment alleged only that defendant kidnapped the victim to facilitate the commission of a felony, N.C.G.S. § 14-39(a)(2); and (3) the evidence failed to reveal that defendant kidnapped the victim before he shot her, or that the victim was with defendant against her will before she was shot.

**3. Constitutional Law— right to counsel—pro se representation**

The trial court did not err by allowing a criminal defendant to proceed pro se because: (1) the trial court reviewed the waiver form and inquired of defendant each necessary element of the form, revealing that defendant knowingly, intelligently, and voluntarily elected to proceed pro se; (2) defendant understood the consequences of his waiver and exercised his own free will; (3) defendant's court-appointed attorney remained in the courtroom with defendant as standby counsel and made motions on defendant's behalf; and (4) defendant continued to confer with his court-appointed counsel, thus availing himself of counsel's expertise and experience.

**4. Evidence— prior bad acts—relevancy**

The trial court did not err in a prosecution for assault with a deadly weapon inflicting serious injury on his second wife by allowing the State to present evidence of defendant's prior bad acts through the testimony of defendant's first wife that defendant snuck into her residence during a time of marital separation, hid in her attic for seventeen hours, and then stabbed her numerous times while she slept, because: (1) the time between defendant's assault of his first wife and second wife was not so remote as to make his first wife's testimony inadmissible; (2) evidence was offered that defendant attacked both women during a period of marital discord, stating at different times that he would not allow them to leave him or to end their marriage to him; (3) defendant never denied stabbing his first wife or shooting his sec-

ond wife for those reasons; and (4) the evidence was not so remote in time as to be irrelevant, and was more probative than prejudicial to show defendant's motive, intent, preparation, plan, absence of mistake, and modus operandi. N.C.G.S. § 8C-1, Rules 403 and 404(b).

### 5. Appeal and Error— preservation of issues—order not in record

Defendant's argument concerning his motion for appropriate relief, which states that his arrest is illegal and he received ineffective assistance of counsel, is not properly before the Court of Appeals because there is no order in the record from which to appeal. N.C. R. App. P. 9(a).

Appeal by defendant from judgments entered 28 August 1998 by Judge Forrest D. Bridges in Mecklenburg County Superior Court. Heard in the Court of Appeals 17 February 2000.

*Attorney General Michael F. Easley, by Assistant Attorney General Elizabeth F. Parsons, for the State.*

*Haakon Thorsen for defendant-appellant.*

HUNTER, Judge.

Stephen David Brooks ("defendant") appeals the trial court's judgments against him for first degree kidnapping under N.C. Gen. Stat. § 14-39 (case no. 96CRS39268), and two charges of assault with a deadly weapon inflicting serious injury under N.C. Gen. Stat. § 14-32(b) (case nos. 96CRS39269 and 96CRS39800). Having found merit in two of defendant's arguments, we reverse in part and find no error in part.

The facts pertinent to this appeal are as follows: Defendant and the victim, Ruth Meeks, were married in July 1993 and lived together as husband and wife until the following spring when Ms. Meeks learned that, at the time of their wedding ceremony, defendant was still married to another woman. Ms. Meeks requested defendant to move out of her residence; however, the two remained in contact. On the morning of 29 July 1996, defendant borrowed Ms. Meeks' van for a doctor's appointment, but later informed her the appointment was in the afternoon. Ms. Meeks allowed defendant to keep the van all day provided he agreed to pick her up from work at lunchtime and drive her to run some errands.

As planned, defendant picked Ms. Meeks up during her lunch hour and drove her to her brother's home. Ms. Meeks went inside, picked up $4,300.00 from her brother and, upon returning to the van, asked defendant to take her to the bank so that she could make a deposit. Approximately five minutes later, defendant yelled "bitch," to which Ms. Meeks looked up and defendant shot her. Ms. Meeks wrestled the gun away from defendant and threw it out of the passenger-side window. When defendant jumped out to get the gun, Ms. Meeks had intended to drive away. However, when Ms. Meeks realized the defendant had taken the keys with him, she got out of the van and began to run away. Not getting far, Ms. Meeks collapsed in the street. Defendant picked up Ms. Meeks and put her back into the van on the floor and drove off.

Ms. Meeks was shot three times. Evidence presented at trial left the question of whether defendant shot Ms. Meeks all three times at once—that is, before she threw the keys out of the window, or whether one or two of the shots were inflicted after she threw the keys out of the window. Shortly after defendant caught Ms. Meeks and put her onto the van floor, she fell unconscious. Ms. Meeks did not regain consciousness until several hours later—as it was becoming dark outside. Defendant was still driving her around in the van. Ms. Meeks testified that defendant finally parked the van, tied her up with duct tape and left her. He returned to the van several hours later and tied her up again (she had been able to get her hands free), then left again. The third time he returned to the van, defendant drove Ms. Meeks to a hospital in Charlotte. There he alerted emergency staff (by cellular phone) of Ms. Meeks' being shot, but he would not let them into the van to give Ms. Meeks medical attention. Instead, defendant locked the van doors, threw the keys outside, then shot himself. Both defendant and Ms. Meeks were rushed into surgery.

[1] Defendant has preserved six assignments of error; however, he argues only five. The first is that because the evidence was insufficient to show that two assaults were committed, the trial court committed reversible error in not allowing defendant's motion to dismiss the second assault at the close of the State's evidence. We are persuaded by defendant's argument.

In reviewing the trial court's denial of defendant's motion to dismiss, this Court must look to see whether

the trial court . . . consider[ed] the evidence in the light most favorable to the State, [having] giv[en] the State the benefit

of every reasonable inference which may be drawn. [However,] [t]he State is still "required to produce substantial evidence more than a scintilla to prove the allegations in the bill of indictment."

*State v. Jarrell*, 133 N.C. App. 264, 267, 515 S.E.2d 247, 250 (1999) (citations omitted) (quoting *State v. Overton*, 60 N.C. App. 1, 26, 298 S.E.2d 695, 710 (1982), *appeal dismissed and disc. review denied*, 307 N.C. 580, 299 S.E.2d 652-53 (1983)). Furthermore, "[i]t is immaterial whether the evidence is direct, circumstantial, or both." *State v. Bradley*, 65 N.C. App. 359, 362, 309 S.E.2d 510, 512 (1983). "[A] motion to dismiss is properly denied if there is substantial evidence of each essential element of the offense charged and that defendant committed the offense." *State v. Leonard*, 74 N.C. App. 443, 447, 328 S.E.2d 593, 595, *disc. review denied*, 314 N.C. 120, 332 S.E.2d 487 (1985). "Substantial evidence is that amount of evidence which a reasonable mind might accept as adequate to support a conclusion." *State v. Rhome*, 120 N.C. App. 278, 291, 462 S.E.2d 656, 665 (1995) (quoting *State v. Rich*, 87 N.C. App. 380, 382, 361 S.E.2d 321, 323 (1987), citing *State v. Cox*, 303 N.C. 75, 87, 277 S.E.2d 376, 384 (1981)).

Defendant is correct in stating that in order for him to be charged with two counts of assault with a deadly weapon, there must be two separate assaults. We agree with the trial court's instructions to the jury, that to find defendant guilty of two separate assaults, "there [must have been] a distinct interruption in the original assault followed by a second assault." In the case at bar, there is no evidence of such a distinction. Consequently, defendant's second assault should have been dismissed.

Ms. Meeks testified that she was first shot as defendant was driving away from her brother's house. She then testified that she wrestled with defendant and took the gun away from him and threw it out of the van's passenger window. Then as he carried her back to the van, defendant had the gun in his hand and she "figured" she was going to get shot again. However, Ms. Meeks fell unconscious soon after defendant put her onto the van floor. She was unclear as to when she received the other two bullet wounds.

It was defendant's position at trial that after he shot Ms. Meeks the first time, the gun went off twice more while she struggled to get the gun away from him. Therefore, he argues that the trial court should have accepted his version of when he shot Ms. Meeks because Ms. "Meeks'[] testimony does not support two assaults . . . [and there]

is no evidence the shots were not [sic] separated by any significant length of time." We agree.

In the case at bar, there was no doubt that Ms. Meeks sustained three bullet wounds. However, her testimony at trial left a gaping hole in answer to exactly *when* she sustained the last two wounds. Unlike cases where there is a contradiction in the parties' versions of what happened, thus making it proper for the issue to be submitted to the jury, *State v. Ali*, 329 N.C. 394, 407 S.E.2d 183 (1991), this is a case in which there was evidence presented by defendant with no contradicting evidence offered by the State. Ms. Meeks' testimony that at first she "could only see two wounds[] [but she] knew [she] had some somewhere else because he initially shot [her]" in a particular area of her body is heart-wrenching. However, we are not persuaded that her testimony rises to the level of being substantial enough to pose a contradiction to defendant's testimony of the events, being alone. The State offers no other evidence that the three shots were not simultaneous—"fail[ing] to prove an essential element of the crime charged. [Therefore,] [d]efendant's motion to dismiss was . . . improperly denied and defendant's conviction [for the second assault (case no. 96CRS39800)] must be reversed." *State v. Phipps*, 112 N.C. App. 626, 629, 436 S.E.2d 280, 282 (1993).

[2] Defendant's next assignment of error is that the trial court committed plain error in allowing him to be convicted of kidnapping under a theory not supported by the bill of indictment. Stating the bill of indictment alleged he had kidnapped Ms. Meeks "by unlawfully restraining her and removing her from one place to another, without her consent, and for the purpose of facilitating the commission of a felony," defendant argues that since the only felony he committed happened *before* he restrained Ms. Meeks, the act did not conform to kidnapping under the theory outlined in the indictment. Instead, defendant argues, the only theory of kidnapping available to the State was that it was done "to facilitate [defendant's] flight" following the commission of a felony.

It is well established that where a defendant has failed to object at trial to the trial court's submission of a charge to the jury, appellate review of his argument may be sought only under the plain error standard. *State v. Odum*, 307 N.C. 655, 656, 300 S.E.2d 375, 376 (1983); *see also State v. Frye*, 341 N.C. 470, 495-96, 461 S.E.2d 664, 676-77 (1995), *cert. denied*, 517 U.S. 1123, 134 L. Ed. 2d 526 (1996). Furthermore, the term plain error does not simply mean obvious or apparent error.

In order to rise to the level of plain error, the error in the trial court's [actions] must be so fundamental that (i) absent the error, the jury probably would have reached a different verdict; or (ii) the error would constitute a miscarriage of justice if not corrected.

*State v. Holden*, 346 N.C. 404, 435, 488 S.E.2d 514, 531 (1997), *cert. denied*, 522 U.S. 1126, 140 L. Ed. 2d 132 (1998). (We note that, in its argument before this Court, the State conceded that if the Court found defendant's second assault conviction to be error, then the kidnapping charge must also be held error.) We agree with defendant that the trial court committed plain error.

Our General Assembly has defined kidnapping in the following way:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person . . . shall be guilty of kidnapping if such confinement, restraint of removal is for the purpose of:

> (1) Holding such other person for a ransom or as a hostage or using such other person as a shield; or

> (2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or

> (3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person; or

> (4) Holding such other person in involuntary servitude in violation of G.S. 14-43.2.

(b) There shall be two degrees of kidnapping as defined by subsection (a). If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree . . . . If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree . . . .

N.C. Gen. Stat. § 14-39(a), (b) (1999).

It is undisputed that Ms. Meeks willingly got into the van with defendant to run errands during her lunch hour. Further, Ms. Meeks testified that she never tried to get away from defendant until after he shot her, when she got out of the van and tried to run but collapsed in the street. Therefore, it was then and only then that kidnapping became a viable charge against defendant, because it was only then that he had to take steps to "confine, restrain, [and] remove" Ms. Meeks from place to place *against her will*. N.C. Gen. Stat. § 14-39(a).

Our Supreme Court has long held that in order to properly indict a defendant for first degree kidnapping, the State must allege both the essential elements of kidnapping as provided in N.C. Gen. Stat. § 14-39(a) and at least one of the elements of first degree kidnapping listed in N.C. Gen. Stat. § 14-39(b). *State v. Ellis*, 90 N.C. App. 655, 369 S.E.2d 642 (1988). Furthermore, an indictment will not support a conviction for a crime unless all the elements of the crime are accurately and clearly alleged in the indictment. *State v. Perry*, 291 N.C. 586, 231 S.E.2d 262 (1977). *See also State v. Taylor*, 280 N.C. 273, 185 S.E.2d 677 (1972).

One of the essential elements of kidnapping is that the State prove defendant either unlawfully confined, restrained, or removed Ms. Meeks from one place to another, *without her consent*. N.C. Gen. Stat. § 14-39(a). The indictment against defendant was limited to one of the alternative reasons listed in the statute as to why defendant had unlawfully confined, restrained or removed Ms. Meeks, the State having chosen to prove a kidnapping to "facilitat[e] the commission of a[] felony." N.C. Gen. Stat. § 14-39(a)(2). However, because we held in the earlier argument that the trial court incorrectly submitted the issue of whether defendant committed two separate assaults against Ms. Meeks; in order for the State to prove kidnapping as alleged in the indictment, the evidence at trial must have shown that defendant kidnapped Ms. Meeks *before* he shot her. There was no evidence at trial that before she was shot, Ms. Meeks was with the defendant against her will. Therefore, the State did not meet its burden of proof and we are required to reverse the kidnapping conviction (case no. 96CRS39268).

[3] Thirdly, defendant assigns error to the trial court's failure to conduct a sufficient inquiry before permitting defendant to proceed *pro se*. Defendant argues that because the trial court did not inform him of the maximum punishments, his convictions should be vacated and the case remanded for a new trial. We find this argument completely unpersuasive.

From the Sixth Amendment of the United States Constitution, as applied to the states by the Fourteenth Amendment, a criminal defendant obtains the right to the assistance of counsel. Furthermore, the United States Supreme Court has long ruled that part of that constitutional right is the right to refuse the assistance of counsel and to conduct one's own defense. In line with the Constitution's requirements, North Carolina law provides, in pertinent part, that a defendant may proceed in a trial without the assistance of counsel "only after the trial judge makes thorough inquiry and is satisfied that the defendant: . . . [c]omprehends the nature of the charges and proceedings and the range of permissible punishments." N.C. Gen. Stat. § 15A-1242(3) (1999).

The record reflects that defendant was appointed counsel, who worked with defendant for more than a year. However, on the day his trial was to begin and after jury selection, defendant told the trial court he and his attorney had a difference of opinion as to upon what strategy his case should be pursued. Revealing a very lengthy discussion between the trial court and defendant, the record reflects that the trial court apprised defendant not only of his right to counsel—though not necessarily his right to "fire" counsel and have more appointed—but also of the possible consequences of his less-than-prudent decision. Nevertheless, stating that he had thirty years of paralegal experience, defendant insisted that the strategy issue was paramount.

> THE COURT: . . . First of all, I want you to understand there may be—there's often a misconception as to what the role of the lawyer is and what the role of the client is as far as decision making goes in the trial of the case.
>
> Once you obtain the assistance of counsel . . . there are certain decisions in the case that are best made by the lawyer. There are some decisions in the case that are absolutely the client's decision. . . .
>
> . . .
>
> But when we get into areas such as trial strategy, the questions of whether or not to call a particular witness, the question of whether or not to present a particular legal defense, the question of how to cross-examine a witness, what method to use, what theory of the case to present . . . those are matters of trial strategy . . . [and] generally are within the discretion of the lawyer.
>
> . . .

**STATE v. BROOKS**

[138 N.C. App. 185 (2000)]

. . . [Y]ou do have the right to discharge your attorney at anytime and to represent yourself if that's what you wish to do.

Now, you do not necessarily have the right simply to fire Mr. Bender and say I want somebody else to represent me other than Mr. Bender.

. . .

I think you do understand what your options are as I explained to you. Any person has the right to represent himself . . . at anytime in a proceeding. That's not something that I recommend.

THE DEFENDANT: It's not something I want to particularly do.

THE COURT: Right. A lawyer can provide valuable assistance in a case. Representing yourself in a trial, particularly a criminal trial, makes about as much sense as somebody saying I don't need a doctor; I can remove my own appendix. . . .

THE DEFENDANT: In 1994 and respectively in 1990 . . . I was charged with assault—

I represented myself and I was found not guilty in both . . . .

So I've been through this before, Your Honor. So I'm not completely oblivious as to the consequences . . . . [T]his is a much more serious matter and I understand that. But I just want to let you know again, I do understand and I appreciate your admonition.

THE COURT: All right. Well, you [and Mr. Bender] take some time and talk about these issues and then let me hear from you when you're ready to give me some further information, and we'll go from there.

(WHEREUPON, . . . a recess was observed.)

THE DEFENDANT: I'd like to invoke my constitutional right and represent myself.

THE COURT: All right, sir. Now, in that regard, have you given careful consideration to what you're doing?

THE DEFENDANT: I believe I have, Judge.

THE COURT: Do you understand that you have a right to be represented by a lawyer in this case?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that the case will be tried according to the Rules of Evidence and that I cannot give you advice about how to handle your defense or what questions to ask, what objections to make or any other aspect of the case? Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that if you represent yourself in the case, which, of course, you have an absolute constitutional right to do, but if you represent yourself in the case, you will be held to the same standards of conduct as would any attorney appearing in the courtroom, which means your demeanor and your behavior must conform to the rules that would be expected of any lawyer appearing in this court?

THE DEFENDANT: Yes.

THE COURT: And so you do wish to discharge Mr. Bender and represent yourself in this matter?

THE DEFENDANT: Yes.

. . .

THE COURT: . . . Well, let me ask you this. Do you wish to have Mr. Bender remain in the courtroom through the balance of the trial?

THE DEFENDANT: Yes, if he wants to.

. . .

THE COURT: Generally I would have—in a case in which you're representing yourself, I would have someone here as stand-by counsel. Unless you have some objection to it, I would instruct Mr. Bender to remain here as stand-by counsel; that is, to be available for questions if you have any questions about the Rules of Evidence, about strategy or anything else, and to be available to take over the defense if you grow weary or if for any other reason you cannot proceed to defend yourself at some point in the course of the trial. That would be my instruction to him unless you object to that. Do you object?

THE DEFENDANT: No, I don't, Your Honor.

Checking that all requirements of the written waiver form were met, the trial judge continued:

> [THE COURT:] You do understand the nature of the charges against you; is that correct?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: You understand that you're charged with first degree kidnapping, two counts of assault with a deadly weapon with intent to kill inflicting serious injury, one count of felonious larceny?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: You understand what the possible punishments are for those?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Do you understand that you have a right to have counsel represent you; . . . ?
>
> And you understand and appreciate the effect of your choice to waive those rights and represent yourself in this matter?
>
> THE DEFENDANT: Yes, Your Honor.

It is unclear whether the trial judge required defendant to sign a written waiver. If so, that waiver is not part of the record before us. However, it is clear from the record that the trial judge reviewed the form, inquiring of defendant each necessary element of the form. "With nothing in the record to indicate otherwise, [*State v.] Warren*[, 82 N.C. App. 84, 345 S.E.2d 437 (1986)] requires us to presume that defendant knowingly, intelligently, and voluntarily elected to proceed *pro se*." *State v. Love*, 131 N.C. App. 350, 355, 507 S.E.2d 577, 581 (1998), *affirmed*, 350 N.C. 586, 516 S.E.2d 382 (1999).

Therefore, from the foregoing, we find defendant's waiver of counsel was knowing, intelligent and voluntary. Furthermore, the record clearly reflects that defendant is ". . . 'literate and competent, that he understood the consequences of his waiver, and that, in waving his right, he was voluntarily exercising his own free will.' " *Id.* at 354, 507 S.E.2d at 580 (quoting *State v. Thacker*, 301 N.C. 348, 354, 271 S.E.2d 252, 256 (1980)). Additionally, we note that although defendant chose to represent himself and conduct his own direct and cross-examinations, his court-appointed attorney, Mr. Bender, remained in the courtroom with defendant and made motions on defendant's

behalf. Furthermore, defendant continued to confer with Mr. Bender, thus availing himself of Mr. Bender's expertise and experience. Therefore, we find no error in the trial court's allowing defendant to continue *pro se.*

**[4]** Defendant's fourth assignment of error is that the trial court erred in allowing the State to present evidence of his prior bad acts. We disagree.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (1999), allows the admission of evidence of defendant's prior bad acts for the limited purpose of proving "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake . . . ." However, that evidence is not admissible either to prove that defendant acted in conformity therewith or to prove that defendant had the propensity or disposition to commit the offense with which he is now charged. *State v. Thomas,* 350 N.C. 315, 514 S.E.2d 486 (1999). Furthermore, that evidence is inadmissible if the probative value is far outweighed by undue prejudice. N.C.R. Evid. 403.

The State offered evidence, by way of defendant's former wife (Mrs. Brooks) testifying, that in 1979 defendant had—during a time of marital separation from her—snuck into his then-wife's residence, hidden in the attic for seventeen hours, and then stabbed her numerous times while she slept. The evidence also tended to show that defendant did not want that marriage to end, just as he did not want his marriage to Ms. Meeks to end. Following the State's *voir dire* and defendant's *voir dire* cross-examination of Mrs. Brooks, the trial judge listened carefully to defendant's objection that the testimony was more prejudicial than probative "because it only shows a propensity for violence. I never denied that I shot the victim in this particular case. . . . [That's] not been contested, [therefore,] it's highly prejudicial and it's inflammatory." Plainly laying out its thought processes, the trial court ruled:

> I have considered this evidence under rule 404(b), and in trying to determine the probative value of this evidence on the points of identity, plan and modus operandi. I've considered the point in time at which the alleged prior events occurred. I've considered any factual similarities between those alleged prior events and the events in question in this trial.
>
> With respect to the remoteness in time, I have considered, as I believe I am compelled to do, the testimony which is uncontra-

dicted that as a result of the alleged prior incident, the defendant was convicted and spent some eight to nine years in prison between that time and the time of the occurrence of the events being considered in this trial. And I find that the time frame is sufficiently relevant. It is not too remote in time so as to preclude it from being relevant on the issues involved in this case.

I find that the factual description of the events have a number of similarities with the events being tried in this particular case including, but no limited to, the fact that this involved an estranged spouse, it occurred some months after a marital separation, that it involved acts of significant violence resulting in serious injury to the victims, which included statements by the defendant that he would kill the victim, and which indeed resulted in serious injury to the victims, and in each case death did not result.

That the violent acts involved repeated wounds to the body of the victims; that in each case there occurred or at least there was involved a significant lapse of time during the carrying out of the acts; in the alleged prior act, a waiting period of approximately 17 hours during which time the defendant allegedly secreted himself in the attic of the victim's home, and in the case now under consideration an alleged lapse of some 22 hours between the time of the perpetration of the alleged assault and the time that the victim was released at Carolinas Medical Center for treatment.

Given those similarities, given the time frames involved, I find that the alleged prior acts are sufficiently similar so as to have probative value on the questions of modus operandi, identity and plan, as well as motive.

Next, I have considered the alleged prior acts under Rule 403 and I've conducted a weighing of the probative value of those alleged prior acts against the possibility of unfair prejudice, surprise, confusion of the jury, delay or waste of time in the trial of this matter, and I find that the likelihood of those factors is outweighed by the probative value of this evidence on these points that I've mentioned. And [sic] therefore have determined in my discretion that the evidence should be allowed and that it will be admitted.

Now, . . . a very important point in my consideration has been the extent to which this evidence might be offered or might tend

to show a propensity for violence, and, of course, the evidence may not be considered for that purpose. And I have specifically analyzed this evidence that's being offered and asked myself the question as to whether this evidence has probative value on the limited points on which I've specifically addressed, or is this merely propensity evidence.

And I find that the evidence does have probative value on those other points, as opposed to being evidence of the defendant's propensity for violence. And I plan to so instruct the jury in that regard . . . . It's certainly not admissible for that purpose.

Noting that it did so instruct the jury, we agree with the trial court, the evidence was not so remote in time as to be irrelevant or of more prejudicial than probative value to the defendant because it tended to show motive, intent, preparation, plan and the absence of mistake and *modus operandi*. *See State v. Cox*, 344 N.C. 184, 472 S.E.2d 760 (1996) (evidence of prior threats admissible to prove premeditation and deliberation—intent, preparation and plan); *State v. Penland*, 343 N.C. 634, 472 S.E.2d 734 (1996), *cert. denied*, 519 U.S. 1098, 136 L. Ed. 2d 725 (1997) (defendant's actions against former girlfriend and those against victim were sufficiently similar so that the 10-year span between the crimes charged and the prior bad acts did not render the evidence too remote to be probative on the issue of common plan or scheme—*modus operandi*). All of these are proper purposes for admitting the evidence. *See State v. Dammons*, 128 N.C. App. 16, 493 S.E.2d 480 (1997).

We find *State v. Jacob*, 113 N.C. App. 605, 439 S.E.2d 812 (1994) dispositive. In that case, the State charged defendant with the statutory rape of his youngest daughter A.J. (age 10 at the time) from his current marriage. Over defendant's objection that the prior bad acts were too remote, the trial court allowed testimony that defendant had raped both his daughters (B.L. and Toni) from a prior marriage, when they were but 9 or 10 years old. In reviewing the trial court's decision to allow the testimonies, this Court stated:

The remoteness factor [of 404(b) evidence] must be examined carefully to determine whether the plan or scheme of molestation was interrupted or ceased due to underlying circumstances, and then resumed in a continual fashion. For example, in *State v. Davis*, this Court determined that a ten-and-one-half-year period between the defendant's prior sexual misconduct and the crime for which he was tried was not so remote in time as to ren-

der the evidence inadmissible, since the defendant had been in prison for the majority of that time. *Davis*, 101 N.C. App. at 20, 398 S.E.2d at 650.

Here, the remoteness in time was due to defendant's having almost no access to the daughters of his first marriage following his divorce. Defendant divorced [his first wife] in 1975, and he seldom had contact with B.L. and Toni . . . thereafter. In July of 1975 defendant married A.J.'s mother. A.J. was not born until 16 April 1979, and did not reach a prepubescent age until several years later. One of the State's witnesses testified the defendant told her that when his daughters "got old enough to know about love," that "he was going to be the one to teach them." As in *Davis*, we find that circumstances prevented the defendant from carrying out his plan to sexually molest his daughters for an extended period of time, however, once the opportunity presented itself, defendant resumed the sexual abuse. Accordingly, we conclude that the remoteness in time in the present case does not make B.L.'s testimony regarding defendant's prior sexual abuse inadmissible.

Furthermore, the evidence was not violative of N.C.R. Evid. 403. Although the evidence was harmful to defendant's case, its probative value outweighed the possibility of unfair prejudice. We conclude the trial court did not err in admitting the evidence pursuant to Rules 404(b) and 403.

*Jacob*, 113 N.C. App. at 611-12, 439 S.E.2d at 815-16.

Likewise, in the case at bar, we find that the time between defendant's assault of his first wife and his second wife was not so remote as to make his first wife's testimony inadmissible. First, we note that defendant spent at least half of the seventeen years in prison serving time for the assault. Secondly, evidence was offered, which defendant did not contradict, that he attacked both women during a period of marital discord, stating at different times that he would not allow them to leave him or to end their marriage to him. Thirdly, defendant never denied stabbing his first wife or shooting his second wife for those reasons. Therefore, we hold that "circumstances prevented the defendant from carrying out his plan [and intent to keep his wives from divorcing him] for an extended period of time, however once the opportunity [or necessity] presented itself, defendant resumed [his initial intent]." *Id.* at 612, 439 S.E.2d at 815. We then hold the trial court committed no error in admitting the evidence.

**[5]** Defendant's final assignment of error regarding his motion for appropriate relief which states "that his arrest is illegal and he received ineffective assistance of counsel," is not properly before this Court. There is no order in the record from which to appeal. N.C.R. App. P. 9(a) (review is solely upon the record on appeal). Therefore, we do not address it.

Based on the foregoing, we reverse the trial court's judgment regarding defendant's convictions of a second assault (case no. 96CRS39268), and the accompanying kidnapping for the purpose of facilitating the commission of a felony (case no. 96CRS39800). We further find no error in defendant's conviction of the first assault (case no. 96CRS39269).

Reversed in part, no error in part.

Judges WYNN and MARTIN concur.