STATE OF NORTH CAROLINA v. ANTOINNE LAMONT MORRIS

No. COA00-1224

(Filed 20 November 2001)

**Kidnapping— second degree—variance between charge and proof**

A defendant's motion to dismiss a second degree kidnapping charge should have been granted where the indictment stated that defendant kidnapped the victim for the purpose of facilitating a felony but did not mention facilitating flight following the commission of a felony, and the State asserted only kidnapping to facilitate second degree rape at trial. The evidence showed that the victim was confined in an apartment living room, knocked unconscious, awoke to find her clothes removed and defendant on top of her, was knocked unconscious again, and awoke locked in a storage closet outside. All of the elements of rape were completed before defendant removed the victim to the storage closet and there was no evidence that defendant removed the victim to the storage closet for the purpose of raping her there. The continuous transaction doctrine does not apply because the two acts were not inseparable or concurrent. While defendant's actions

made his flight easier and may have supported a conviction of second degree kidnapping for the purpose of facilitating flight, the State failed to carry its burden of proving that defendant's action facilitated defendant's commission of the rape.

Judge WALKER dissenting.

Appeal by defendant from judgment entered 8 June 2000 by Judge Timothy S. Kincaid in Superior Court, Mecklenburg County. Heard in the Court of Appeals 12 September 2001.

*Attorney General Roy Cooper, by Assistant Attorney General Jennie Wilhelm Mau, for the State.*

*Public Defender Isabel Scott Day, by Assistant Public Defender Julie Ramseur Lewis, for defendant-appellant.*

McGEE, Judge.

Antoinne Lamont Morris (defendant) was indicted for second degree rape and second degree kidnapping on 15 September 1997. A jury found defendant guilty of both charges. Defendant was sentenced on 8 June 2000 to consecutive terms of 100 to 129 months in prison for the second degree rape charge, and twenty-nine to forty-four months in prison for the second degree kidnapping charge. Defendant appeals.

Evidence presented by the State at trial tended to show that the victim saw defendant in the cafeteria between 11:00 a.m. and 12:00 noon at West Mecklenburg High School in Charlotte, North Carolina on 18 August 1997, the first day of school. The victim recognized defendant because she had attended summer school with him and also had previously dated his cousin. Defendant asked the victim if she would follow him to a friend's house because he thought something was wrong with his car, and she agreed.

At the apartment, defendant went upstairs and when he came back down, the victim asked him for a drink of water. He went into the kitchen and fixed her some water, then returned upstairs. Defendant called the victim to come upstairs, and he began to rub her shoulders and breasts. The victim was uncomfortable, walked downstairs, and told defendant she was about to leave. Defendant pushed her away from the door. When she attempted to leave a second time, defendant punched her in the face, and she blacked out. When the victim awoke, defendant was on top of her. She was not wearing her

shorts or underwear. She screamed for defendant to get off and began hitting and scratching him. Defendant hit her in the face again, and she lost consciousness. She awoke the next morning around 6:00 a.m. in the storage closet outside the apartment. She was wearing only a tank top and felt sore all over her body. She tried to yell but her tongue was stuck to the bottom of her mouth. She managed to kick open the door and crawl to a neighbor's apartment. The neighbors found her hysterical and difficult to understand. They found clothes for her to wear and called the police.

Charlotte-Mecklenburg Police Officer R.L. Matthews responded to the call. Officer Matthews found the victim difficult to understand. She appeared to be in a drugged state, but she did not smell of alcohol. The victim was transported to Carolinas Medical Center where she was examined by Tina Haning, a registered nurse, who prepared a sexual assault kit. She was also examined by Dr. Douglas Swanson. The victim gave a statement to the police which was substantially similar to the information she gave to both the nurse and doctor. The police prepared a photographic lineup and presented it to the victim the next day in the hospital. She immediately identified defendant as the perpetrator.

Lenora Barbour, a Crime Scene Search technician, searched the apartment where the alleged incident occurred and found a white plastic trash bag in the laundry area containing a pair of underwear, a pair of shorts, a soiled sanitary napkin, a possibly blood-stained towel, and a used condom.

At trial, defendant admitted he had lied to the police in an earlier interview when he stated he had not been with the victim on 18 August 1997, had not taken her to his friend's house, and had not engaged in sexual intercourse with her, either consensually or forcibly. Defendant testified at trial that he had asked the victim to come to his friend's house; they engaged in consensual sexual intercourse; he stopped having sex with the victim when he realized she was having her menstrual cycle; when he left the apartment, he left her alone in his friend's bedroom; and he did not place her into the storage closet. He testified he had earlier lied to the police because he was seventeen at the time, scared, and he did not trust the police, nor feel they would believe his story. Defendant's mother testified she saw her son late in the afternoon of 18 August 1997, but she did not see any scratches on his neck. Defendant's friend, Anthony Thame, corroborated defendant's testimony that defendant picked up Thame about 2:15 p.m. after school on 18 August 1997.

Defendant first argues the trial court erred in denying defendant's motion to dismiss the charge of second degree kidnapping because the evidence was insufficient for the jury to find each element of the crime charged in the indictment beyond a reasonable doubt; specifically, the evidence was insufficient to show defendant confined or restrained the victim for the purpose of facilitating the rape. We agree.

"It has long been the law of this state that a defendant must be convicted, if convicted at all, of the particular offense charged in the warrant or bill of indictment." *State v. Faircloth,* 297 N.C. 100, 107, 253 S.E.2d 890, 894, *cert. denied,* 444 U.S. 874, 62 L. Ed. 2d 102 (1979). An "indictment will not support a conviction for a crime unless all the elements of the crime are accurately and clearly alleged in the indictment." *State v. Brooks,* 138 N.C. App. 185, 192, 530 S.E.2d 849, 854 (2000). A motion to dismiss based on a fatal variance in the indictment "is based on the assertion, not that there is no *proof* of a crime having been committed, but that there is none which tends to prove that the particular offense charged in the bill has been committed. In other words, the proof does not fit the allegation." *State v. Gibson,* 169 N.C. 318, 322, 85 S.E. 7, 9 (1915).

Kidnapping is defined in N.C. Gen. Stat. § 14-39(a) (1999):

Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person . . . shall be guilty of kidnapping if such confinement, restraint, or removal is for the purpose of:

. . .

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony[.]

The indictment for second degree kidnapping stated defendant kidnapped the victim "for the purpose of facilitating the commission of a felony." The indictment made no mention of facilitating defendant's flight following the commission of a felony. At trial, the State again asserted only that the kidnapping facilitated the felony of second degree rape.

In *Faircloth,* the defendant forced the victim from a parking lot with a knife, drove her to a secluded area, robbed her, and raped her. The police arrived and arrested him before he could attempt an

escape. The defendant was indicted for and convicted of second degree kidnapping for the purpose of facilitating flight. However, our Supreme Court held the evidence showed a kidnapping for the purpose of facilitating rape, not facilitating the flight following the rape. The Court therefore reversed the trial court's judgment. *Faircloth*, 297 N.C. at 108, 253 S.E.2d at 895.

Similarly, in *Brooks*, the defendant was indicted for and convicted of kidnapping for the purpose of facilitating assault with a deadly weapon inflicting serious injury. Our Court held that "in order for the State to prove kidnapping as alleged in the indictment, the evidence at trial must have shown that defendant kidnapped [the victim] *before* he shot her." *Brooks*, 138 N.C. App. at 192, 530 S.E.2d at 854. We found no such evidence was presented at the trial. Our Court found defendant confined and restrained the victim only after he shot her. The defendant successfully argued under these facts the "only theory of kidnapping available to the State was that it was done 'to facilitate [defendant's] flight' following the commission of a felony." *Brooks* at 190, 530 S.E.2d at 853. However, the defendant was not indicted for this charge. Consequently, our Court reversed defendant's kidnapping conviction.

In the case before us, the evidence presented shows the victim was confined in the apartment living room, she was knocked unconscious, she awoke once to find defendant on top of her and her clothes removed, she was knocked unconscious again, and when she awoke a second time, she was locked in the storage closet outside. The evidence presented could possibly show defendant kidnapped the victim for the purpose of facilitating the flight from the commission of a felony; however, this crime was not charged. There is no evidence defendant removed the victim to the storage closet for the purpose of raping her there. All of the physical evidence of a rape was found inside the apartment. While there was testimony that the victim kicked her way out of the storage closet, there was no evidence of a struggle or a rape inside the storage closet.

The State argues the evidence is sufficient to show the kidnapping facilitated the rape under the continuous transaction doctrine. The continuous transaction doctrine has been applied where the defendant has committed a murder and within a short period surrounding the murder also committed arson, an armed robbery, a sex offense, a rape, or a kidnapping. *See State v. Campbell*, 332 N.C. 116, 120, 418 S.E.2d 476, 478 (1992) (holding the doctrine of continuous transaction applies to murder/arson cases); *State v. Olson*, 330 N.C.

557, 566, 411 S.E.2d 592, 597 (1992) (armed robbery and murder); *State v. Thomas*, 329 N.C. 423, 434, 407 S.E.2d 141, 149 (1991) (applying continuous doctrine to felony murder and sexual offense where court held whether victim was alive or dead when sexual offense occurred is immaterial because "the sexual act was committed during a continuous transaction that began when the victim was alive."); *State v. Trull*, 349 N.C. 428, 449, 509 S.E.2d 178, 192 (1998), *cert. denied*, 528 U.S. 835, 145 L. Ed. 2d 80 (1999) ("All that is required to support convictions for a felony offense [rape] and related felony murder 'is that the elements of the underlying offense and the murder occur in a time frame that can be perceived as a single transaction.' "). Our Supreme Court has defined the doctrine stating a "killing is committed in the perpetration or attempted perpetration of another felony when there is no break in the chain of events between the felony and the act causing death, so that the felony and homicide are part of the same series of events, forming one continuous transaction." *State v. Wooten*, 295 N.C. 378, 385-86, 245 S.E.2d 699, 704 (1978).

Our Courts have also held in order to elevate a sexual offense or rape charge to first degree sexual offense or first degree rape, a defendant must use a weapon or cause serious bodily injury as part of a continuous transaction involving the sex offense or rape. *See State v. Whittington*, 318 N.C. 114, 347 S.E.2d 403 (1986). Also, the threat of a deadly weapon and a taking of personal property from someone must be part of a continuous transaction in order to constitute armed robbery. *See State v. McDonald*, 130 N.C. App. 263, 502 S.E.2d 409 (1998).

However, our Courts have not applied the continuous transaction doctrine to instances involving rape and kidnapping like the situation we have before us. While these two acts occurred close in time, they were not inseparable or concurrent actions. All of the elements of the rape were completed before defendant removed the victim to the storage closet.

The State also relies on *State v. Kyle*, 333 N.C. 687, 694, 430 S.E.2d 412, 415-16 (1993), in arguing that "to facilitate" means "to make easier." Therefore, any act which makes the commission of the felony easier will support a conviction of facilitating the felony. In *Kyle*, the kidnapping made the eventual murder easier because it prevented the victim from escaping. While we agree with this theory of the State's argument and its definition of "to facilitate," the facts in the case before us do not support this theory. While there is little

question defendant's actions made his flight from the scene easier and was an attempt to cover up his act, the removal of the victim to the storage closet in no way made defendant's rape of her easier, as all the elements of rape were completed before the removal. Again, defendant's actions possibly would support a conviction of second degree kidnapping for the purpose of facilitating his flight from the commission of a rape; however, the State has failed to carry its burden in proving defendant's actions facilitated defendant's commission of the actual rape. As the evidence does not support the charge stated in the indictment, defendant's motion to dismiss the second degree kidnapping charge should have been granted, and we are required to reverse his conviction for second degree kidnapping.

We need not address defendant's remaining assignments of error.

Defendant's conviction for second degree kidnapping is reversed.

Judge HUDSON concurs.

Judge WALKER dissents.

WALKER, Judge, dissenting.

I respectfully dissent from the majority opinion which reverses defendant's conviction for second degree kidnapping.

I am unable to reconcile the facts of this case with those of our Supreme Court's decision in *State v. Hall*, 305 N.C. 77, 286 S.E.2d 552 (1982), *overruled on other grounds by State v. Diaz*, 317 N.C. 545, 346 S.E.2d 488 (1986). In *Hall*, the defendant was convicted of armed robbery, kidnapping and assault. The kidnapping portion of the indictment charged that the defendant had moved the victim to facilitate the commission of the felony of armed robbery. The evidence showed that the defendant and a co-defendant, who was armed with a pistol, robbed a service station where the victim worked as a night attendant. After emptying the cash register and removing $40 from the victim, the defendant forced the victim into his car, drove him nearly five miles and left him on the side of the interstate highway. *Id.* at 79-80, 286 S.E.2d at 554-55.

Defendant argued that the crime of armed robbery was complete when his co-defendant pointed the pistol at the victim and attempted

to take his property; therefore, any movement of the victim was for the purpose of facilitating flight and not to facilitate the commission of the armed robbery. The Court rejected this argument refusing to find a bright line distinction between the various motives listed in the kidnapping statute:

> The purposes specified in G.S. 14-39(a) are not mutually exclusive. A single kidnapping may be for the dual purposes of using the victim as a hostage or shield and for facilitating flight, or for the purposes of facilitating the commission of a felony and doing serious bodily harm to the victim. So long as the evidence proves the purpose charged in the indictment, the fact that it also shows the kidnapping was effectuated for another purpose enumerated in G.S. 14-39(a) is immaterial and may be disregarded.

*Id.* at 82, 286 S.E.2d at 555.

Here, the evidence shows that defendant, during the course of the rape, twice rendered the victim unconscious and moved her to the storage closet. When the victim awoke the next morning, she was wearing only a tank top. However, the defendant contends that all of the elements of rape were complete prior to his movement of the victim to the storage closet. In so doing, he attempts to make the same bright line distinction between "facilitating the commission of any felony" and "facilitating flight" that was specifically rejected in *Hall.* "[T]he fact that all of the essential elements of a crime have arisen does not mean the crime is no longer being committed. That the crime was 'complete' does not mean it was completed." *Id.* at 82-83, 286 S.E.2d at 556 (citation omitted). Thus, the jury could have concluded that defendant's acts constituted one continuous transaction such that the crime of rape, although complete in the apartment, was not completed until the victim was removed to the storage closet. Indeed, the logical extension of defendant's argument leads to a conclusion that a defendant could never be convicted of kidnapping under a facilitating the commission of a rape theory if the "movement, confinement, or restraint" of the victim occurs after the sexual act. I respectfully decline to make such a bright line distinction.