STATE OF NORTH CAROLINA v. KORTNEY J. MADDOX

No. COA02-1489

(Filed 15 July 2003)

**1. Witnesses— hostile—refusal to respond**

The trial court did not abuse its discretion by allowing the State to treat an assault victim as a hostile witness and ask leading questions where the record showed that the witness refused to answer questions and was evasive when he did respond.

**2. Evidence— hearsay—statement to police—admission not prejudicial—other evidence**

The admission of a hostile witness's statement to police in an assault prosecution was harmless, even if defendant's general objection was sufficient, because other evidence revealed that defendant shot at the witness a number of times with a handgun as the witness ran behind a tree. There is no possibility that the jury would have reached a different result.

**3. Assault— with a deadly weapon with intent to kill—sufficiency of evidence**

There was sufficient evidence of assault with a deadly weapon with intent to kill where defendant shot at the victim five times with a nine-millimeter handgun as the victim attempted to flee, and the victim was spared serious injury or death only by jumping behind a tree.

**4. Assault— multiple shots—single assault**

The trial court erred by not dismissing four of five assault charges as part of a single assault where the shots were fired in a single place in rapid succession and were not separate events requiring defendant to employ his thought processes each time he fired the gun.

**5. Sentencing— offense committed during probation—evidence**

The trial court did not err in sentencing defendant for assault with a deadly weapon with intent to kill by finding that the offense was committed while he was on probation and adding a point to his prior record level. Although the State did not move to admit the record check, it was handed up to the trial court and was sufficient to support the finding.

Appeal by defendant from judgments dated 22 May 2002 by Judge Mark E. Klass in Iredell County Superior Court. Heard in the Court of Appeals 12 June 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Joan M. Cunningham, for the State.*

*Duncan B. McCormick for defendant-appellant.*

BRYANT, Judge.

Kortney J. Maddox (defendant) appeals from judgments dated 22 May 2002 entered consistent with jury verdicts finding him guilty on five separate counts of assault with a deadly weapon with intent to kill.

At trial, the State presented testimony from the alleged victim David McLean, Jr. (McLean). McLean testified that he "barely" remembered the incident in question, he and defendant had "made up," and were now "friends." McLean further asserted that he did not remember his conversation with the prosecutor the previous day and that he preferred "not to answer no questions, sir." After continuing to evade the State's questions, McLean stated he remembered telling the prosecutor the previous day that the incident began at the "liquor house" on 21 October 2000 after McLean thought defendant had made a comment about his girlfriend. The prosecutor asked if he was referring to Tate's Liquor House. McLean responded, "Yes, that's where I shot at [defendant] first, and then [defendant] shot back at me." McLean could not recall how much time elapsed between the time he shot at defendant and when defendant shot at him, except that it was a short time later, and refused to state where that shooting occurred. Following further evasive answers and his reluctance or inability to remember events, the State requested that McLean be declared a hostile witness.

After arguments by counsel, the trial court allowed the State "wide latitude" to ask McLean leading questions on direct exami-

nation. When questioning resumed, McLean admitted giving a statement to the police approximately thirty minutes after the shooting and reviewing that statement with the prosecutor the day before trial. The State moved to admit the statement into evidence, and defendant entered only a general objection. The trial court overruled the objection and admitted the statement into evidence without any limiting instruction.

McLean specifically recalled telling the police officer that he was at the intersection of Bell and Harrison Streets in Statesville, North Carolina on 21 October 2000 and observed defendant pointing a Tech-9 pistol. He remembered stating that he ran and defendant chased him firing a number of shots. McLean testified directly that he heard numerous shots fired at him from behind as he ran away and had jumped behind a tree to escape. He denied showing the officer the tree he ran behind or to pointing out the spot from where the shots had been fired.

Officer David Onley testified he was a police officer with the Statesville Police Department. On 21 October 2000, he responded to a call of "shots fired" on Harrison Street. He arrived on the scene less than a minute later and was approached by McLean, who came running up to the patrol car. McLean was sweating profusely and out of breath, and he told Officer Onley that defendant was trying to kill him. After securing the scene and unsuccessfully attempting to interview other witnesses, Officer Onley took defendant's statement. The next day, Officer Onley returned to the scene and, based on McLean's description of the incident, located five spent nine-millimeter shell casings in the road. Officer Onley knew that a Tech-9 pistol was a nine-millimeter handgun. McLean pointed out to Onley the tree behind which he had fled. Upon inspection of the tree, Officer Onley located five holes in it that seemed to be fresh. A photograph of the tree showing the five holes was admitted into evidence. Officer Onley's report was admitted into evidence with an instruction to the jury that it was to be considered as only corroborating or impeachment evidence and not as substantive evidence. In its final instructions to the jury, the trial court generally instructed that any prior out-of-court statements could be used to weigh only the credibility of the witnesses by corroborating or contradicting trial testimony and could not be considered as substantive evidence.

At sentencing, defendant stipulated to four prior misdemeanor convictions. The State further argued that defendant should be assessed an additional prior record point as the assault was commit-

ted while defendant was on probation. The State then tendered a prior record level worksheet to opposing counsel and handed it to the trial court in support of the prior convictions. The State also handed up a criminal record check showing defendant was on probation at the time of the present offense, although the record check was not admitted into evidence. The trial court found defendant was on probation at the time of the offense, which resulted in defendant having five prior record points and being sentenced at Prior Record Level III.

The issues are whether: (I) the trial court erred by allowing the State to use leading questions to examine McLean and admitting McLean's prior statement; (II) there was sufficient evidence of assault with a deadly weapon with intent to kill; (III) defendant was properly convicted of five counts of assault arising from a single assault; and (IV) the trial court erred in finding defendant was on probation at the time of the offense.

I

Defendant first contends the trial court erred by allowing the State to treat McLean as a hostile witness by using leading questions to examine him and, further, that the admission of McLean's prior statement into evidence during this examination was improper.

### A. Hostile Witness

[1] Rule 611(c) of the North Carolina Rules of Evidence provides: "Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony." N.C.G.S. § 8C-1, Rule 611(c) (2001). Leading questions may be used during direct examination when a party calls a hostile or unwilling witness. *Id.* "Whether to allow a leading question on direct examination clearly falls within the discretion of the trial court." *State v. York*, 347 N.C. 79, 90, 489 S.E.2d 380, 386-87 (1997). Thus, a trial court's decision to allow or disallow leading questions will be upheld absent an abuse of that discretion. *See id.* at 90, 489 S.E.2d at 387; *State v. Riddick*, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986).

In this case, the record shows McLean refused to answer some questions and was evasive in his answers when he did respond. He asserted that defendant and he were friends, they had "made up" following the shooting, and he preferred not to answer any questions. Based on this record, the trial court was within its discretion

to allow the State to treat McLean as a hostile witness by asking leading questions.

### B. Prior Statement

[2] Defendant further contends that the admission of McLean's prior statement to police following the shooting was an impermissible use of impeachment evidence as a subterfuge to present to the jury inadmissible hearsay testimony as substantive evidence. Defendant, however, entered only a general objection to the admission of the prior statement without stating specific grounds and, further, did not request a limiting instruction on the extent to which the jury could consider the statement. As such, defendant has waived appellate review of this issue. *See* N.C.R. App. P. 10(b)(2). Assuming without deciding, however, that defendant properly preserved his objection and the prior statement constituted inadmissible hearsay, the admission of this statement was not prejudicial error as we determine there was sufficient evidence upon which the jury could convict defendant of assault with a deadly weapon with intent to kill. The evidence reveals, even without the prior statement, that defendant shot at McLean a number of times with a nine-millimeter handgun in response to an earlier confrontation as McLean ran behind a tree. Officer Onley found five nine-millimeter shell casings and observed five holes in the tree behind which McLean indicated he had fled. Based on this uncontradicted and substantial evidence of all the elements of assault with a deadly weapon with intent to kill, there is no reasonable possibility that the jury in this case would have reached a different result. *See* N.C.G.S. § 15A-1443(a) (2001). Thus, admission of the prior statements was at most harmless error.

### II

[3] Defendant next contends the trial court erred by not dismissing the charges of assault with a deadly weapon with intent to kill because there was insufficient evidence that defendant intended to kill McLean. We disagree.

A motion to dismiss should be denied if "there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense." *State v. Lynch*, 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990). "Substantial evidence is that relevant evidence which a reasonable mind would find sufficient to support a conclusion." *State v. Carr*, 122 N.C. App. 369, 372, 470 S.E.2d 70, 72 (1996). In determining whether there is evidence sufficient for a case to go to the jury, the trial court must consider the evi-

dence, both direct and circumstantial, in the light most favorable to the State, giving the State the benefit of every reasonable inference drawn therefrom. *Id.* "An intent to kill is a mental attitude, and ordinarily it must be proved, if proven at all, by circumstantial evidence, that is, by proving facts from which the fact sought to be proven may be reasonably inferred." *State v. Grigsby*, 351 N.C. 454, 457, 526 S.E.2d 460, 462 (2000) (citation omitted) (internal quotations omitted). "The nature of the assault, the manner in which it was made, the weapon, if any, used, and the surrounding circumstances are all matters from which an intent to kill may be inferred." *Id.* (citation omitted) (internal quotations omitted). "Moreover, an assailant must be held to intend the natural consequences of his deliberate act." *Id.* (citation omitted) (internal quotations omitted).

The evidence in this case reveals that defendant shot at McLean five times with a Tech-9 nine-millimeter handgun as McLean attempted to flee. McLean was only spared from serious injury or death by jumping behind a tree. The nature and manner of this assault and the weapon used is substantial evidence that defendant intended to kill McLean. Thus, the trial court did not err in dismissing the charges based upon the insufficiency of the evidence.

III

[4] Defendant also argues that the trial court erred in not dismissing four of the five assault charges on the ground that the five gunshots actually constituted only a single assault. We agree.

In order for a defendant to be charged with multiple counts of assault, there must be multiple assaults. *State v. Brooks*, 138 N.C. App. 185, 189, 530 S.E.2d 849, 852 (2000). This requires evidence of "a distinct interruption in the original assault followed by a second assault." *Id.* In *State v. Dilldine*, this Court noted that it was improper to have two indictments and two offenses arising out of a single episode simply because the victim was shot three times in the front and twice in the back. *Dilldine*, 22 N.C. App. 229, 231, 206 S.E.2d 364, 366 (1974). The Court went on to state that to conclude otherwise would make it reasonable to charge the defendant with five assaults simply because five shots had been fired. *Id.*

The scenario cautioned against in *Dilldine* is exactly the scenario presented in the case *sub judice*. There is no evidence that the five shots fired by defendant at McLean were separate assaults: the State presented no evidence of the time between each shot and what evidence does exist indicates that all five shots were fired in rapid suc-

cession at approximately the same target, as indicated by the bullet holes in the tree. The State's attempts to analogize this case to *State v. Nobles*, 350 N.C. 483, 515 S.E.2d 885 (1999) and *State v. Rambert*, 341 N.C. 173, 459 S.E.2d 510 (1995) are unpersuasive. First of all, both cases are distinguishable in that neither involved charges of assault but instead multiple charges of discharging a weapon into occupied property. *See Nobles*, 350 N.C. at 504-05, 515 S.E.2d at 898-99; *Rambert*, 341 N.C. at 175-77, 459 S.E.2d at 512-13. The evidence in *Rambert* revealed that the victim's vehicle was parked in a parking lot when the defendant pulled up next to him. *Rambert*, 341 N.C. at 176, 459 S.E.2d at 512-13. The defendant produced a handgun and the victim ducked. *Id*. The defendant fired a single shot that entered through the front of the victim's windshield. *Id*. The victim then attempted to escape by driving forward; defendant shot a second time hitting the passenger side door. *Id*. Defendant then began pursuing the victim and fired a third shot into the rear bumper of the victim's vehicle. *Id*. In *Nobles*, the evidence revealed a total of seven bullets had been fired into a vehicle: two in the windshield; one below the windshield; one near a headlight; one near the top of the truck bed; one in the truck bed; and one that had shattered the driver's side door window. *Nobles*, 350 N.C. at 505, 515 S.E.2d at 898-99.

In both of these cases the North Carolina Supreme Court concluded the evidence was sufficient to support the multiple charges of discharging a weapon into occupied property as it showed each defendant had been required to " 'employ his thought processes each time he fired the weapon' " and that each shot was an " 'act . . . distinct in time, and each bullet hit the vehicle in a different place.' " *Id*. (quoting *Rambert*, 341 N.C. at 176-77, 459 S.E.2d at 513). Both of these cases relied on evidence that defendant had not used an automatic weapon and that the shots fired into the property were located in numerous places around the respective vehicles. *Id*.

In this case, the evidence shows five bullets struck a single tree all in close proximity to each other, and there is no evidence to suggest anything other than that the shots were fired in rapid succession. Furthermore, the evidence indicates, and the State asserts, that the weapon used was a semi-automatic handgun. When a semi-automatic weapon is fired "it will fire the round that is in the chamber, eject the spent casing and move another round from the magazine into the firing chamber. Such a pistol automatically cocks itself for the second round." *State v. Stager*, 329 N.C. 278, 293, 406 S.E.2d 876, 884-85 (1991). Our Courts have recognized that a semi-automatic weapon

STATE v. MADDOX

[159 N.C. App. 127 (2003)]

"may be used normally to fire several bullets . . . in rapid succession." *State v. Antoine*, 117 N.C. App. 549, 551, 451 S.E.2d 368, 370 (1995) (quoting *State v. Carver*, 319 N.C. 665, 667-68, 356 S.E.2d 349, 351 (1987)). Therefore, the evidence in this case, as distinct from both *Nobles* and *Rambert*, is that the shots were fired at a single place in rapid succession and were not separate events requiring defendant to employ his thought processes each time he fired the gun. This case is instead analogous to *Dilldine* and *Brooks* where, in each case, multiple gunshots constituted only a single assault. Thus, there was only evidence sufficient to support a single charge of assault with a deadly weapon with intent to kill, and the trial court should have arrested judgment on the remaining four counts.

IV

[5] Defendant finally contends that the trial court erred in finding that the offense was committed while he was on probation and adding an additional point to his prior record level determination for a total of five points, which resulted in defendant being sentenced at Prior Record Level III. *See* N.C.G.S. § 15A-1340.14(b)(7) (2001) (providing for an additional prior record point where the offense was committed while defendant was on probation, parole, post-release supervision, while serving a term of imprisonment, or while on escape).

The record in this case reveals that, although the State did not move to admit the record check, it was handed up to the trial court.[1] Our review of the record check considered by the trial court reveals that defendant was sentenced to twenty-four months probation on 26 January 2000. The offense in this case was committed on 21 October 2000, less than nine months later. We conclude the record check in this case is sufficient to support a finding that defendant was on probation at the time he committed the offense. Thus, we conclude defendant is not entitled to a new sentencing hearing.

Accordingly, we uphold defendant's conviction and sentence on a single count of assault with a deadly weapon with intent to kill but reverse and dismiss four of the five convictions. *See* N.C.G.S. § 15A-1447 (2001) (relief available on criminal appeal).

---

1. On 27 May 2003, this Court allowed the State's motions to amend the record to include the record check handed to the trial court. The State concedes this record check was not admitted into evidence but states it was handed to the trial court. Defendant, although asserting the record check was not admitted into evidence, does not contest the State's assertion that it was handed to the trial court.

Case No. 00 CRS 56703: No error.

Case Nos. 01 CRS 1087-90: Reversed and Dismissed.

Judges McGEE and GEER concur.