STATE v. KIRKWOOD

[229 N.C. App. 656 (2013)]

---

STATE OF NORTH CAROLINA
v.
ALPHONSO ELLIS KIRKWOOD, LARELL MCDANIEL, Defendants

No. COA12-1359

Filed 17 September 2013

1. **Firearms and Other Weapons—discharging weapon into occupied property—motion to dismiss—sufficiency of evidence—perpetrator or co-conspirator**

    The trial court did not err by denying defendant Kirkwood's motion to dismiss the charges of discharging a weapon into occupied property based on alleged insufficient evidence that he was the perpetrator or a co-conspirator of the charged offenses. The State's evidence was sufficient to allow a reasonable jury to find that

defendant was the driver of the vehicle from which the three shots were fired into the victims' home.

2. **Constitutional Law—double jeopardy—multiple convictions—discharging weapon into occupied property**

The trial court did not violate defendant McDaniel's right to be free from double jeopardy by entering judgment against him on more than one count of discharging a weapon into occupied property. Regardless of the uncertainty as to the number of shooters and whether only the revolver rather than both guns was used in the shooting, the State's evidence tended to show that each of the three shots for which defendant was convicted was distinct in time, and each bullet hit the pertinent house in a different place.

3. **Constitutional Law—effective assistance of counsel—failure to move to arrest judgment on additional charges—no prejudicial error**

Defendant McDaniel did not receive ineffective assistance of counsel based on his trial counsel's failure to move, based on double jeopardy grounds, to arrest judgment on two counts of discharging a weapon into occupied property. Defendant could properly be convicted of and sentenced for all three counts.

Appeal by defendants from judgments entered 3 May 2012 by Judge Wayland J. Sermons, Jr. in Johnston County Superior Court. Heard in the Court of Appeals 25 April 2013.

*Attorney General Roy Cooper, by Special Deputy Attorney General Tina L. Hlabse, for the State (Kirkwood appeal).*

*Attorney General Roy Cooper, by Assistant Attorney General Christina S. Hayes, for the State (McDaniel appeal).*

*Sarah Jessica Farber for defendant-appellant Kirkwood.*

*Sue Genrich Berry for defendant-appellant McDaniel.*

GEER, Judge.

Defendants Alphonso Ellis Kirkwood and Larell McDaniel appeal from their convictions of three counts of discharging a weapon into occupied property. On appeal, defendant Kirkwood argues that the trial court erred in denying his motion to dismiss because the State failed to

present substantial evidence that he was the perpetrator or a co-conspirator of the charged offenses. We hold that the State's evidence was sufficient to allow a reasonable jury to find that defendant Kirkwood was the driver of the vehicle from which the three shots were fired into the victims' home. This evidence was sufficient to defeat defendant Kirkwood's motion to dismiss.

Defendant McDaniel primarily argues on appeal that the trial court violated his right to be free from double jeopardy by entering judgment against him on more than one count of discharging a weapon into occupied property. We hold, based upon *State v. Rambert*, 341 N.C. 173, 459 S.E.2d 510 (1995), and *State v. Nobles*, 350 N.C. 483, 515 S.E.2d 885 (1999), that defendant McDaniel could properly be convicted and sentenced for three counts of discharging a weapon into occupied property.

Facts

The State's evidence tended to show the following facts. At approximately 12:15 a.m. on 14 April 2011, four gunshots were fired into the front door area of a house located in Smithfield, North Carolina. At that time, the house was occupied by Marcus Manley, Larnetta Moss, and Ms. Moss' then four-year-old daughter. Immediately after the shots were fired, a witness heard tires squealing, and both Ms. Moss and a neighbor called 911.

Within one minute of receiving the 911 call, Officer Steven Allen Walker, II of the Smithfield Police Department responded to the call and, while in route to the scene of the shooting, saw a burgundy SUV leaving the area near the shooting at a "high rate of speed." The SUV cut in front of Officer Walker's patrol car at an intersection. Officer Walker pulled behind the SUV and activated his blue lights and siren, but the SUV did not stop. Several additional police officers then joined the chase.

While Officer Walker pursued the SUV, he saw a gun thrown from the driver's side of the vehicle. Officers later returned and collected that gun, a semiautomatic .25 caliber Titan handgun. The hammer was pulled back on the gun and it had one live round in the chamber.

Officers continued pursuing the SUV until it turned onto a dead end street and stopped. Both of the driver's side doors and one of the passenger's side doors of the SUV opened and three people ran from the vehicle. The person who got out of the passenger's side door was never identified. Defendant McDaniel exited from the rear driver's side seat. Defendant Kirkwood, wearing all dark colored clothing, exited from the driver's seat. Several officers pursued the SUV down the dead end

STATE v. KIRKWOOD

[229 N.C. App. 656 (2013)]

street and then chased defendants on foot as defendants ran into a "cut-through" at the end of the street.

When the SUV turned down the dead end street, Officer Walker drove around the block and stopped his patrol car near where the cut-through ended. As defendants ran from the cut-through, Officer Walker and other officers ran after them. At least one officer kept sight of defendants running through the cut-through until the time Officer Walker attempted to stop them at the other end. Defendants evaded Officer Walker and ran into a trailer home nearby.

Officers surrounded the trailer and ordered the people inside to come out. Defendant McDaniel's mother, who lived in the trailer, came outside. After about 30 seconds to a minute, defendant Kirkwood came out of the trailer wearing all dark clothing and drenched in sweat. After roughly five minutes with the officers yelling for defendant McDaniel to come out, he left the bathroom of the trailer wearing only boxer shorts.

Defendants were taken to the police department, and a gunshot residue test was performed on defendant Kirkwood. Subsequent analysis of the gunshot residue test tended to show that defendant Kirkwood had recently discharged a firearm, handled a discharged firearm, or was in close proximity to a firearm when it was discharged.

During an interview with Detective Chris Blinson of the Smithfield Police Department, defendant Kirkwood stated that he was walking through backyards and saw police officers shoot at a burgundy Chevrolet Blazer. Detective Blinson told defendant Kirkwood his story did not make sense, and defendant Kirkwood then stated he had been at the house of "Ms. Dees" and that he "didn't even go to that part of town." Detective Blinson asked him what part of town he meant, and defendant Kirkwood responded he was talking about "where the shooting happened." Detective Blinson had not yet, however, told defendant Kirkwood where the shooting happened.

At the scene of the shooting, officers identified four bullet holes in the front door area of the house. One was in the top of the door, near the ceiling of the porch. Two bullet holes were located to the right of the front door, one higher up than the other. Officers removed and collected one projectile from the wooden door frame of the house, but did not recover the others.

Detective Blinson seized a box of 7.65 caliber pistol ammunition in the door of the burgundy SUV. He also found an unfired .25 caliber bullet in the SUV that was identical to the bullet found in the Titan handgun.

At approximately 1:30 p.m. on 14 April 2011, a citizen passerby found a New England Firearms, five-shot revolver directly across the street from where the Titan handgun was recovered. There was a single 7.65 round of ammunition in the cylinder of the revolver, identical to the ammunition found in the burgundy SUV a few hours earlier. The revolver was a single and double action gun and could fire in both modes. Single action means that when the user manually cocks the gun and pulls the trigger, the hammer falls and the gun fires. Double action means that when the user pulls the trigger, the hammer cocks and releases and, at the same time, the cylinder rotates into alignment with the barrel and the gun fires.

Subsequent testing of the New England revolver, the Titan handgun, and the projectile recovered from the house indicated that the projectile was a bullet fired from the revolver. The New England revolver functioned properly during testing. The Titan handgun fired at times during testing, but sometimes did not fire when the trigger was pulled.

Defendants Kirkwood and McDaniel were indicted for four counts of discharging a weapon into occupied property. At trial, defendant McDaniel testified in his own defense to the following. On the night of 14 April 2011, defendant McDaniel was picked up by his friend, Jamel Rhodes, and went to see another friend. Mr. Rhodes dropped defendant McDaniel off in the area of East Parker Street and defendant McDaniel walked to meet the friend while Mr. Rhodes remained further down the block. After 10 to 15 minutes, defendant McDaniel heard three gunshots, returned to Mr. Rhodes' SUV, got in the rear driver's side seat, and asked what was happening. Mr. Rhodes drove away and another male, who had not been in the SUV earlier, who was not defendant Kirkwood, and whom defendant McDaniel could not identify or describe, was in the SUV.

The police began to chase the SUV, and when defendant McDaniel asked Mr. Rhodes to stop so he could get out of the vehicle, Mr. Rhodes refused because he was a felon and was illegally in possession of a gun. Defendant McDaniel opened his door to jump several times, but whenever he did, the SUV sped up. When the SUV stopped, defendant McDaniel saw two people near the end of the dead end street.

While running towards his mother's house, defendant McDaniel saw defendant Kirkwood running in front of him, and the two entered the house. Defendant McDaniel initially lied to the police because he was scared. Defendant McDaniel did not fire a gun that night, did not know anybody else was going to do so, never had a gun that night, and never

disposed of a gun for anybody that night. Defendant Kirkwood was never in the SUV with defendant McDaniel.

Defendant Kirkwood did not present evidence at trial. At the close of the State's evidence, the trial court dismissed one count of discharging a weapon into occupied property as to each defendant. The jury found both defendants guilty of three counts of discharging a weapon into occupied property. The trial court sentenced defendant Kirkwood to three consecutive presumptive-range terms of 51 to 71 months imprisonment. The court sentenced defendant McDaniel to three consecutive presumptive-range terms of 60 to 81 months imprisonment. Both defendants timely appealed to this Court.

I

[1] Defendant Kirkwood's sole argument on appeal is that the trial court erred in denying his motion to dismiss because the State failed to present substantial evidence that he was the perpetrator or a co-conspirator of the charged offenses. "This Court reviews the trial court's denial of a motion to dismiss *de novo.*" *State v. Smith,* 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).

" 'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.' " *State v. Fritsch,* 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (quoting *State v. Barnes,* 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith,* 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980).

"In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose,* 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994). " 'Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, *taken singly or in combination,* satisfy

[it] beyond a reasonable doubt that the defendant is actually guilty.' " *Fritsch,* 351 N.C. at 379, 526 S.E.2d at 455 (internal citation omitted) (quoting *Barnes,* 334 N.C. at 76, 430 S.E.2d at 919).

Here, the State's evidence[1] tended to show that the bullet recovered from the door frame of Mr. Manley and Ms. Moss' house was fired from the New England revolver. The revolver was found on the same day of the shooting, across the street from the Titan handgun that officers saw thrown from the burgundy SUV. The single bullet found in the revolver was identical to the box of bullets found in the burgundy SUV. Moreover, the revolver was a five-shot revolver and four of the chambers were empty when the revolver was recovered, consistent with four shots being fired into the home.

Immediately after the shooting, a witness heard tires squealing. When the responding officers first saw the SUV, it was driving away from the area near the shooting at a high rate of speed and cut in front of one officer's patrol car. When officers attempted a traffic stop of the SUV, it fled and led the officers on a chase through the town. A reasonable jury could conclude from this evidence that the shooter was in the burgundy SUV.

The officers' testimony showed that when the burgundy SUV stopped on the dead end street, a tall, thin black male dressed in dark-colored clothing got out of the driver's seat and ran into the cut-through. Officer Page Carroll of the Smithfield Police Department kept that individual in her sight until she saw Officer Walker and others chasing him on the other side of the cut-through. An officer chasing the suspects on the other side of the cut-through saw them enter the back door of the trailer belonging to defendant McDaniel's mother. Defendant McDaniel's mother testified at trial that defendant Kirkwood and defendant McDaniel ran into the back door of her trailer just before the police arrived.

When police ordered people out of the trailer, defendant Kirkwood came out wearing all dark clothing and drenched in sweat. Officer

---

1. This Court has held that "when defendants are tried jointly and one of them offers no evidence, the evidence of the co-defendant may not be considered on a motion to dismiss by the defendant offering no evidence." *State v. DiNunno,* 67 N.C. App. 316, 319, 313 S.E.2d 3, 5 (1984) (interpreting N.C. Gen. Stat. § 15-173). Here, defendant Kirkwood moved to dismiss at the close of the State's evidence and at the close of all the evidence. Based on *DiNunno,* our review of defendant Kirkwood's motion to dismiss is limited to only whether the State's evidence was sufficient to survive defendant Kirkwood's motion to dismiss.

Carroll identified defendant Kirkwood as the person she had just seen get out of the driver's seat of the burgundy SUV and run into the cut-through. Likewise, Officer Walker and another officer who attempted to intercept the suspects on the other side of the cut-through and who saw the suspects enter the trailer, identified defendant Kirkwood as one of the two suspects they were chasing. This testimony constituted substantial evidence that defendant Kirkwood was the driver of the burgundy SUV.

Moreover, the gunshot residue test performed on defendant Kirkwood tended to show that he had recently discharged a firearm, handled a discharged firearm, or was in close proximity to a firearm when it was discharged. The State's expert witness in gunshot residue analysis testified that, according to studies, it was unlikely that the gunshot residue particles found on defendant Kirkwood's hands had been there for more than two or three hours.

Finally, during his police interview, defendant Kirkwood demonstrated knowledge of the shooting beyond what an uninvolved person would know by denying being in the part of town in which the shooting occurred before the interviewer ever told him where the shooting occurred. This evidence further tended to identify defendant Kirkwood as the perpetrator or a co-conspirator in the shooting.

Defendant Kirkwood nonetheless argues that he did not confess to committing the offenses; that defendant McDaniel testified defendant Kirkwood was not in the SUV and did not implicate defendant Kirkwood as a perpetrator; that Officer Walker erroneously chased the SUV instead of proceeding directly to the house where the shooting occurred; that during the foot chase, officers lost sight of the runners at times; that there were no fingerprints found on either gun in this case; and that the State's efforts in investigating the shooting were minimal. However, defendant's arguments merely ask the Court to view the evidence in the light most favorable to defendant, contrary to the well-established standard of review for motions to dismiss.

In light of the circumstantial evidence tying the burgundy SUV to the shooting, the evidence that defendant Kirkwood was the driver of the SUV, defendant Kirkwood's flight from police, defendant Kirkwood's statement showing knowledge of the location of the shooting, and the gunshot residue located on defendant Kirkwood shortly after the shooting, we hold that the State presented substantial evidence that defendant Kirkwood was the perpetrator or a co-conspirator of the charged offenses. Consequently, the trial court did not err in denying defendant Kirkwood's motion to dismiss.

## II

**[2]** Defendant McDaniel first argues that the trial court erred in entering judgment on more than one of his three guilty verdicts for discharging a weapon into occupied property. Defendant McDaniel asserts that his sentence effectively punished him three times for committing the same offense and, thereby, violated his right to be free from double jeopardy. We disagree.

As an initial matter, the State contends that defendant McDaniel's double jeopardy argument is not properly preserved for appellate review. "Constitutional questions not raised and passed on by the trial court will not ordinarily be considered on appeal." *State v. Tirado*, 358 N.C. 551, 571, 599 S.E.2d 515, 529 (2004).

Defendant McDaniel did not argue to the trial court that entering judgments on multiple counts of discharging a weapon into occupied property would violate his right to be free from double jeopardy. Defendant McDaniel nevertheless argues that this issue is preserved for appeal, despite his failure to raise the issue below, pursuant to N.C. Gen. Stat. § 15A-1446(d)(18) (2011). N.C. Gen. Stat. § 15A-1446(d)(18) provides:

> Errors based upon any of the following grounds, which are asserted to have occurred, may be the subject of appellate review even though no objection, exception or motion has been made in the trial division.
>
> . . . .
>
> (18)   The sentence imposed was unauthorized at the time imposed, exceeded the maximum authorized by law, was illegally imposed, or is otherwise invalid as a matter of law.

Defendant's argument is inconsistent with our Supreme Court's decisions holding that a double jeopardy issue cannot be raised for the first time on appeal. *See, e.g., State v. Davis*, 364 N.C. 297, 301, 698 S.E.2d 65, 67 (2010) ("To the extent defendant relies on constitutional double jeopardy principles, we agree that his argument is not preserved because '[c]onstitutional questions not raised and passed on by the trial court will not ordinarily be considered on appeal.' " (quoting *Tirado*, 358 N.C. at 571, 599 S.E.2d at 529)); *State v. Madric*, 328 N.C. 223, 231, 400 S.E.2d 31, 36 (1991) ("The defendant candidly concedes . . . that he did not raise any double jeopardy issue at trial. Therefore, this issue has been waived."). Since we are bound by the rulings of our Supreme

Court, we find defendant's preservation argument based upon N.C. Gen. Stat. § 15A-1446(d)(18) unpersuasive.

Nevertheless, despite defendant McDaniel's failure to raise his double jeopardy argument to the trial court, the trial court ruled on the double jeopardy issue on its own initiative. After arguments on defendants' motions to dismiss, the court stated:

> But getting to the question of the counts, *State versus Ray* says that we use the safe [sic] evidence test. The test is whether the facts alleged in the second or additional count would sustain a conviction under the first count *in a double jeopardy analysis, which is what it is. . . .*
>
> . . . .
>
> . . . I think I'm stuck with the same evidence test. When you analyze the same evidence test, the jury would have to find in order to convict the defendants of more than one count, that bullet A would stand for Count I. A separate bullet not being Bullet A, i.e., B or C, would have to stand for Count II and on and on and on. I think there is sufficient evidence to take the case to the jury on three counts.

(Second emphasis added.) The trial court then, based on the "same evidence test," dismissed the fourth count of discharging a weapon into occupied property as to each defendant.

The rule that constitutional questions must be raised first in the trial court is based upon the reasoning that the trial court should, in the first instance, "pass[] on" the issue. *Tirado*, 358 N.C. at 571, 599 S.E.2d at 529. *See also State v. Mason*, 174 N.C. App. 206, 208, 620 S.E.2d 285, 286-87 (2005) (" '[T]he double jeopardy protection may not be raised on appeal unless the defense and the facts underlying it are brought first to the attention of the trial court.' " (quoting *State v. McKenzie*, 292 N.C. 170, 176, 232 S.E.2d 424, 428 (1977))). For this reason, this Court has previously explained that a " 'double jeopardy argument [need not] us[e] those exact words [to be preserved for appeal, if] the substance of the argument was sufficiently presented and, *more importantly, addressed by the trial court . . . .*' " *State v. Gobal*, 186 N.C. App. 308, 320-21, 651 S.E.2d 279, 287 (2007) (quoting *State v. Ezell*, 159 N.C. App. 103, 106, 582 S.E.2d 679, 682 (2003)), *aff'd per curiam*, 362 N.C. 342, 661 S.E.2d 732 (2008). Since, in this case, the transcript affirmatively shows that the trial court addressed and ruled upon the double jeopardy issue, albeit

on its own initiative, we hold that defendant McDaniel's double jeopardy issue is properly before this Court.

"Both the North Carolina and the United States Constitutions provide that no person may be twice put in jeopardy of life or limb for the same offense." *Rambert*, 341 N.C. at 175, 459 S.E.2d at 511. *See* U.S. Const. amend. V; N.C. Const. art. I, § 19. The constitutional guarantees against double jeopardy include "the protection against multiple punishments for the same offense." *Rambert*, 341 N.C. at 175, 459 S.E.2d at 512. A double jeopardy claim that the defendant is being punished more than once for the same offense must demonstrate that the multiple punishments stem from " 'the "same offense" *both in law and in fact.*' " *Id.* (quoting *State v. Lewis*, 32 N.C. App. 298, 301, 231 S.E.2d 693, 694 (1977)). "As such, when a court is determining whether a second indictment places the defendant in double jeopardy, the court must examine the law under which the charges are being brought and the facts underlying each count." *Id.*

Defendant McDaniel was indicted with a single indictment containing four counts of discharging a weapon into occupied property in violation of N.C. Gen. Stat. § 14-34.1(b) (2011). The elements of discharging a weapon into occupied property "are (1) willfully and wantonly discharging (2) a firearm (3) into property (4) while it is occupied." *Rambert*, 341 N.C. at 175, 459 S.E.2d at 512.

Where multiple counts in "indictments [a]re identical and d[o] not describe in detail the specific events or evidence that would be used to prove each count," an "[e]xamination of the facts underlying each charge . . . more accurately illustrates whether defendant has been placed in double jeopardy." *Id.* at 176, 459 S.E.2d at 512. Here, each of the four counts in defendant McDaniel's indictment contained, in total, the following identical factual allegations: "[O]n or about April 14, 2011, in the county of Johnston, the Defendant named above unlawfully, willfully and feloniously did discharge a handgun, a firearm, into a building and dwelling, located at 209 East Parker Street, Smithfield, Johnston County, North Carolina, while it was actually occupied by Marcus Darnell Manley, Larnetta Moss and [Ms. Moss' daughter]." The trial court dismissed one of the four counts, leaving only three at issue in this appeal. Since the allegations in each count do not sufficiently describe the specific evidence to be used to prove the separate counts, we must examine the facts underlying each charge.

In *Rambert*, this Court rejected the defendant's argument that his conviction and sentencing on three counts of discharging a firearm into

occupied property violated double jeopardy principles. *Id.* at 177, 459 S.E.2d at 513. There, the State's evidence tended to show that the victim was sitting in a parked car in a parking lot when the defendant, riding in a car, pulled alongside the victim's car. *Id.* at 176, 459 S.E.2d at 512. The defendant produced a gun, the victim ducked, and the defendant fired a shot into the front windshield of the victim's car. *Id.* The victim drove forward and, when the cars were approximately 10 yards apart, the defendant fired a second shot that struck the passenger's side door of the victim's car. *Id.* The defendant then "pursued" the victim and fired a third shot, which lodged in the rear bumper of the victim's car. *Id.*, 459 S.E.2d at 512-13.

The Court in *Rambert* held that this evidence "clearly show[ed] that defendant was not charged three times with the same offense for the same act but was charged for three separate and distinct acts." *Id.*, 459 S.E.2d at 512. The Court reasoned: "Each shot, fired from a pistol, as opposed to a machine gun or other automatic weapon, required that defendant employ his thought processes each time he fired the weapon." *Id.* at 176-77, 459 S.E.2d at 513. Moreover, "[e]ach act was distinct in time, and each bullet hit the vehicle in a different place." *Id.* at 177, 459 S.E.2d at 513.

Similarly, in *Nobles*, 350 N.C. at 505, 515 S.E.2d at 899, this Court relied upon *Rambert* to conclude that the trial court properly denied the defendant's motion to consolidate three of his seven charges of discharging a firearm into an occupied vehicle. The Court in *Nobles* relied upon evidence that tended to show the "defendant's actions were seven distinct and separate events," including evidence that prior to the time of the murder, the truck did not have any bullet holes or broken glass, but after the murder there were seven bullet holes in victim's truck: "[t]here were two bullet holes in the windshield, one near the middle of the windshield and one near the edge of the windshield on the passenger's side; there was a bullet hole below the windshield on the driver's side and one near the headlight on the driver's side; there was a bullet hole on the top of the truck's bed on the driver's side and one in the bed of the truck; and the driver's side door window was burst, which, based on the evidence, was caused by the fatal gunshot to the victim." *Id.*, 515 S.E.2d at 898-99. The Court further relied on evidence that the defendant's gun had the capacity to hold nine bullets, it was empty at the murder scene, and the gun was not a machine gun or other automatic weapon. *Id.*, 515 S.E.2d at 899.

The evidence in this case tended to show that, like the first two shots in *Rambert*, three gunshots were fired in quick succession. A neighbor

and Ms. Moss each heard three distinct although rapid gunshots. Officers responding to the scene located one bullet hole in the top of the front door, near the ceiling of the porch. They located two additional bullet holes to the right of the front door, one higher up than the other. These three bullet holes were, therefore, each in different locations around the front door area of the house, like the distinct bullet holes in different locations on the cars in *Rambert* and *Nobles*.

The evidence further showed that at least one of the shots was fired from the revolver, which, in single action mode, must be manually cocked between firings and, in double action mode, can still only fire a single bullet at a time. The other gun that may have been used in the shooting, the Titan handgun, was semiautomatic but did not always function properly and many times, when the trigger was pulled, would not fire. As in *Rambert* and *Nobles*, neither gun was a fully automatic weapon such as a machine gun.

We note that, based on our review of the record, there are several scenarios of the shooting supported by the evidence. For example, it is possible that two gunmen in the SUV, each using a different gun, fired one or more shots into the house. It is further possible that one gunman used both guns while shooting. It is also possible, however, that a single gunman used only the revolver.

However, despite this uncertainty as to the number of shooters and whether only the revolver rather than both guns was used in the shooting, the State's evidence nevertheless tended to show that each of the three shots for which defendant McDaniel was convicted was "distinct in time, and each bullet hit the [house] in a different place." *Rambert,* 341 N.C. at 177, 459 S.E.2d at 513.

Defendant McDaniel nonetheless cites *State v. Brooks*, 138 N.C. App. 185, 530 S.E.2d 849 (2000), and *State v. Dilldine*, 22 N.C. App. 229, 206 S.E.2d 364 (1974), in support of his argument. In *Brooks*, this Court held that the trial court erred in denying the defendant's motion to dismiss one of his two charges for assault with a deadly weapon for insufficient evidence because all the evidence showed the defendant shot the victim three times simultaneously. 138 N.C. App. at 189-90, 530 S.E.2d at 852-53. Similarly, in *Dilldine*, the Court observed that it was improper for the State to charge the defendant with two counts of felonious assault where the evidence showed that the defendant shot the victim three times in the front and then, when the victim turned to leave, twice in the back. 22 N.C. App. at 230, 231, 206 S.E.2d at 366.

*Brooks* and *Dilldine* each applied the rule, specific to assault cases, that "for a defendant to be charged with multiple counts of assault," the State must present evidence of "'a distinct interruption in the original assault followed by a second assault.'" *State v. Maddox,* 159 N.C. App. 127, 132, 583 S.E.2d 601, 604-05 (2003) (quoting *Brooks,* 138 N.C. App. at 189, 530 S.E.2d at 852). In *Maddox,* another assault case, this Court relied upon *Brooks* and *Dilldine* and distinguished *Rambert* and *Nobles* since "neither involved charges of assault but instead multiple charges of discharging a weapon into occupied property." *Id.* at 133, 583 S.E.2d at 605. Conversely, since this case involves charges for discharging a weapon into occupied property and not assault, *Rambert* and *Nobles,* rather than *Brooks* and *Dilldine,* control our decision.

Defendant McDaniel additionally relies upon *State v. Potter,* 285 N.C. 238, 253, 204 S.E.2d 649, 659 (1974) ("[W]hen the lives of all employees in a store are threatened and endangered by the use or threatened use of a firearm incident to the theft of their employer's money or property, a single robbery with firearms is committed."), and *State v. Becton,* 163 N.C. App. 592, 594-96, 594 S.E.2d 143, 144-45 (2004) (relying on *Potter* and applying same rule). However, the Courts in *Potter* and *Becton* addressed situations where multiple robbery charges were brought against the defendants for taking by force a single employer-victim's money from multiple employees. *See Potter,* 285 N.C. at 238, 251-52, 204 S.E.2d at 650, 658; *Becton,* 163 N.C. App. at 593, 594 S.E.2d at 143. *Potter* and *Becton* are, therefore, legally and factually distinguishable from the present case.

We conclude, based upon *Rambert* and *Nobles,* that the evidence here supported three separate charges against defendant McDaniel. Consequently, the trial court did not err in entering three judgments against defendant McDaniel for discharging a weapon into occupied property.

[3] Defendant McDaniel also argues that he received ineffective assistance of counsel because his trial counsel failed to move, based on double jeopardy grounds, to arrest judgment on two counts of discharging a weapon into occupied property. Since we have concluded that defendant McDaniel could properly be convicted of and sentenced for all three counts, he cannot show that his attorney failed to provide effective assistance of counsel. *See State v. Brewton,* 173 N.C. App. 323, 333, 618 S.E.2d 850, 858 (2005) (holding, where defendant challenged jury instruction and also claimed ineffective assistance of counsel based upon his counsel's failure to object to instruction, "because we find no error in the instructions, defendant's claim for ineffective assistance of

counsel must also be rejected"). We, therefore, conclude defendants received a trial free from prejudicial error.

No error.

Judges ELMORE and DILLON concur.