An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-762
NORTH CAROLINA COURT OF APPEALS

Filed: 1 April 2014

STATE OF NORTH CAROLINA

   v.
                               Jackson County
                               No. 11 CRS 1787
                                  11 CRS 1789-95

SCOTT JAY STOUGH


Appeal by Defendant from judgments entered 1 October 2012 by Judge Alan Z. Thornburg in Jackson County Superior Court. Heard in the Court of Appeals 9 January 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Derrick C. Mertz, for the State.*

> *Appellate Defender Staples Hughes, by Assistant Appellate Defender Paul M. Green, for Defendant.*


DILLON, Judge.


Scott Stough ("Defendant") appeals from judgments entered 1 October 2012 convicting him of eight drug-related crimes, including, *inter alia*, trafficking in methamphetamine by possession, as well as three conspiracy crimes involving methamphetamine. On appeal, Defendant challenges the

sufficiency of the evidence to support that the mixture he allegedly possessed was actually methamphetamine or to support his conviction of multiple conspiracies. Defendant also contends the trial court committed plain error in its instructions pertaining to the conspiracy charges. Because we believe that the evidence cannot support a conviction for both conspiracy to traffic methamphetamine by possession and conspiracy to traffic methamphetamine by manufacture, *see State v. Howell*, 169 N.C. App. 741, 749, 611 S.E.2d 200, 206 (2005), we vacate Defendant's conviction on the latter charge and remand this matter to the trial court to arrest judgment on the latter conviction only. However, as to Defendant's remaining arguments, we find no reversible error.

The evidence of record tends to show the following: Defendant operated the Moonshine Mini Mart (the "Mini Mart"), a convenient store in Cullowhee, North Carolina. The Mini Mart was owned by Defendant's sister, Charlotte Stough, who lived in a basement apartment below the Mini Mart.

Agent Shannon Ashe, with the North Carolina State Bureau of Investigation, interviewed Tim Luker and Tripp Parker concerning illegal drug activity at the Mini Mart. Both implicated Defendant in the illegal manufacturing of methamphetamine. For

example, Luker indicated that he had purchased pseudoephedrine, an ingredient used in the manufacture of methamphetamine, for Defendant on three occasions.

Agent Ashe confirmed through MethCheck – a statewide centralized computer that tracks all sales of pseudoephedrine – that Luker had, indeed, purchased pseudoephedrine three times. Moreover, he confirmed that Defendant's license and that of his sister were used to purchase pseudoephedrine over 30 times between March 2009 and November 2010. Amanda Clawson, Luker's girlfriend, purchased pseudoephedrine on four occasions between September and November 2010.

On 4 December 2010, Agent Ashe received a notification through MethCheck that Defendant had just made a purchase of pseudoephedrine at a local pharmacy and immediately proceeded to that location, where he observed Defendant leaving the pharmacy and proceeding to his sister's basement apartment.

After securing a warrant, a team of officers approached Defendant's and Charlotte Stough's residences. In Defendant's residence, police discovered marijuana, pipes for smoking marijuana and methamphetamine, and two boxes of pseudoephedrine. Police also entered the Mini Mart where they saw Defendant standing in the gap between the two counters. Police also

observed another man, Harley Shearer, proceeding from the Mini Mart to Charlotte's apartment with a backpack and a cardboard box. In the cardboard box, police discovered, *inter alia*, Defendant's checkbook wrapped in a rubber band, inside which police discovered a baggie of methamphetamine and several pieces of paper containing "methamphetamine recipes."

Another warrant was obtained to search the Mini-Mart. During the search of the Mini Mart, the police discovered a number of items used in the production of methamphetamine. Also at the Mini Mart, Police discovered a bottle containing a mixture which purportedly included liquid methamphetamine under one of the counters where Defendant had been standing.

Defendant was arrested, after which he was indicted on numerous charges and tried in the 10 September 2012 session of Jackson County Superior Court, the Honorable Alan Z. Thornburg presiding. A jury found Defendant guilty of eight drug-related charges. The trial court entered judgments consistent with the jury's verdicts and sentenced Defendant to concurrent terms in the presumptive range of 96 to 125 months, three terms of 90 to 117 months, 21 to 26 months, and 10 to 12 months. Defendant was also sentenced to a term of 6 to 8 months on one of the charges, which was set as consecutive, but which was suspended with

Defendant placed on supervised probation. From these judgments, Defendant appeals.

I: Sufficiency of the Evidence; Standard of Review

In Defendant's first two arguments on appeal, he contends the trial court erred by denying his motion to dismiss for insufficiency of the evidence for two reasons: (1) The State allegedly presented insufficient evidence to support more than one conspiracy charge, implicating principles of double jeopardy; and (2) the State allegedly presented insufficient evidence to support Defendant's possession of 200 to 400 grams of a mixture containing methamphetamine. We address each argument in turn.

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). "'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.'" *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)), *cert. denied*, 531 U.S. 890, 148 L. Ed.

2d 150 (2000). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995).

### A: Multiple Conspiracy Convictions

Defendant first argues the State presented insufficient evidence to support his three conspiracy convictions – conspiracy to manufacture methamphetamine, conspiracy to traffic methamphetamine by possession, and conspiracy to traffic methamphetamine by manufacture – stating that, at most, the State proved one conspiracy to manufacture and possess 200 to 400 grams of a mixture containing methamphetamine. Defendant further contends his right to be free from double jeopardy was infringed.

"The crime of conspiracy is, essentially, an agreement to commit a substantive criminal act." *State v. Howell*, 169 N.C. App. 741, 748, 611 S.E.2d 200, 205 (2005) (citation omitted). "No express agreement need be proved; proof of circumstances which point to a mutual implied understanding to commit the

unlawful act is sufficient to prove a conspiracy." *Id.* (citation omitted). "There is no simple test for determining whether single or multiple conspiracies are involved: the essential question is the nature of the agreement or agreements, but factors such as time intervals, participants, objectives, and number of meetings all must be considered." *State v. Rozier*, 69 N.C. App. 38, 52, 316 S.E.2d 893, 902, *cert. denied*, 312 N.C. 88, 321 S.E.2d 907 (1984) (citation omitted).

The State contends that Defendant's arguments have been waived. Specifically, the State contends – and Defendant concedes – that Defendant did not properly preserve his double jeopardy argument by lodging a motion a trial. *See State v. Kirkwood*, __ N.C. App. __, __, 747 S.E.2d 730, 736, *appeal dismissed*, __ N.C. __, __ S.E.2d __ (2013) (holding that "a double jeopardy issue cannot be raised for the first time on appeal"). Further, inasmuch as Defendant's argument is a sufficiency argument – based on the State's alleged failure to provide substantial evidence of three separate agreements to support three conspiracy convictions – and not a constitutional double jeopardy argument, Defendant concedes that his argument, likewise, was not properly preserved by his failure at trial to move to dismiss the charges on this basis. *See State v. Euceda-*

*Valle*, 182 N.C. App. 268, 271, 641 S.E.2d 858, 861, *cert. denied*, 361 N.C. 698, 652 S.E.2d 923 (2007) (stating that "[w]hen a party changes theories between the trial court and an appellate court, the [argument] is not properly preserved and is considered waived").

However, with respect to two of Defendant's conspiracy convictions, the State makes the following declaration in its brief: "At best, [D]efendant is correct that the conspiracy to traffick by possession, and conspiracy to traffick by manufacture cannot each be supported [by the evidence] . . . and that judgment must be arrested as to one of these counts," and cites our decision in *Howell*, *supra*, to support this "concession." We agree with the State's concession that in this case, like in *Howell*, though there was substantial evidence "to support a finding of [D]efendant's guilt of conspiracy to traffic" in methamphetamine, there was not substantial evidence that Defendant engaged in "two [separate] conspiracies" to traffic. 169 N.C. App. at 748-49, 611 S.E.2d at 606. Further, we choose to consider Defendant's sufficiency argument to the extent that he argues the insufficiency of the evidence to support both his conviction of conspiracy to traffic methamphetamine by possession and his conviction of conspiracy

to traffic the same by manufacture; and, following our resolution in *Howell*, we vacate judgment on one of Defendant's three conspiracy convictions, namely his conviction of conspiracy to traffic methamphetamine by manufacture.

### B: Possession of 200 to 400 grams

Defendant argues on appeal that the State presented insufficient evidence to support his possession of 200 to 400 grams of a mixture containing methamphetamine, an element of trafficking by possession. This argument is properly preserved; however, we conclude it is without merit.[1]

Specifically, Defendant argues that there was insufficient evidence that the mixture in the bottle found under the Mini Mart counter contained methamphetamine. Rather, Defendant contends the State only presented evidence that the bottle

---

[1] N.C. Gen. Stat. § 90-95(h)(3b)b., under which Defendant was convicted, does not *require* that the crime involve 200 grams of methamphetamine, but rather allows for a conviction if the "mixture" which contains *some amount* of methamphetamine weighs at least 200 grams. This Court held that under a prior version of this statute, trafficking in methamphetamine was determined by the amount of the methamphetamine itself and *not* the weight of the entire mixture which contained the methamphetamine. *State v. Conway*, 194 N.C. App. 73, 669 S.E.2d 40 (2008). However, this statute was amended by the General Assembly in 2009 Session Law, Chapter 463, which provided "AN ACT TO AMEND THE LAW REGARDING TRAFFICKING IN METHAMPHETAMINE AND AMPHETAMINE TO CLARIFY THAT THE CHARGE OF TRAFFICKING IS BASED ON THE WEIGHT OF THE ENTIRE POWDER OR LIQUID MIXTURE RATHER THAN THE WEIGHT OF THE ACTUAL AMOUNT OF CONTROLLED SUBSTANCE IN THE POWDER OR LIQUID MIXTURE."

contained four of the five ingredients – namely pseudoephedrine, ammonium nitrate, lithium metal strips and Coleman fuel – necessary to start the chemical reaction that produces methamphetamine, but that the State "presented no evidence that sodium hydroxide[,]" also called caustic soda or lye, "had been added to the mixture" to complete the chemical process. Defendant's theory was supported by testimony from his expert.

Our review of the record, however, shows contrary evidence, which supports the State's position that the bottle found at the Mini Mart, indeed, contained methamphetamine. For instance, Special Agent Morrow Lee Tritt ("Agent Tritt"), a clandestine laboratory expert with twenty years of experience at the State Bureau of Investigation, testified to the presence of this fifth ingredient in the bottle as follows:

> Q. And then at the bottom – what would be the bottom of the bottle, what would be the parts of it that we're looking at there?
>
> A. These actually appear to be the little round beads of the amonia [sic] nitrate fertilizer. Also has sodium hydroxide in it and then the pseudoephedrine as well, along with the Coleman fuel and the lithium. Five items.

Further, Elizabeth Regan, forensic chemist with the North Carolina State crime lab, testified that she did not agree with Defendant's expert, but rather she indicated that one sample of

the mixture she tested contained an "abundance of . . . 100,000 units[,]" which she opined was "a reportable amount." Ms. Regan said, "[i]n this instance, that is a significant amount." Accordingly, there was substantial evidence that at least a portion of the mixture in the bottle had combined to become methamphetamine.

Defendant further contends that the testimony of his expert revealed that the State's evidence regarding its chemical analysis of the substance in the bottle was "not . . . scientifically valid," and therefore inconsistent with *State v. Ward*, 364 N.C. 134, 147, 694 S.E.2d 738, 747 (2010), which stated that "the burden is on the State to establish the identity of any alleged controlled substance[,] . . . [and] some form of scientifically valid chemical analysis is required." We disagree. Rather, the State's evidence showed that a chemical analysis was performed. Specifically, Agent Michael Piwowar, a forensic chemist with the State Bureau of Investigation, Crime Laboratory Division, testified as follows: "The first thing I did was, again, a marquis color test, which turned orange. And the orange indication indicates a possibility of a methamphetamine or a methamphetamine-like substance. So to confirm the presence, I did use a GC mass spectrometer, which is

an instrument that will actually separate out any components contained into a sample. And upon using that, I got the result of methamphetamine and pseudoephedrine."

After reviewing the evidence in the record in the light most favorable to the State, we conclude the State presented sufficient evidence for the jury to infer that the bottle in Defendant's constructive possession contained a methamphetamine mixture.

## II: Jury Instruction; Plain Error

In Defendant's next argument on appeal, he contends that the trial court committed plain error in two respects when it instructed the jury on the conspiracy indictments. We have carefully reviewed the jury instruction and conclude that the trial court did not commit error, much less plain error, in either respect.

In this case, the trial court provided separate instructions for each of the three conspiracy indictments. Defendant argues that because "[t]he evidence supported no more than one agreement[,] . . . [t]he trial judge could not properly instruct the jury on three virtually identical conspiracies without giving the jury the option of finding that the three charges constituted only one conspiracy." In other words,

Defendant does *not* argue that the trial court misstated the law with respect to any one of the three conspiracies charged. Rather, Defendant argues that the trial court erred by failing to provide an *additional* instruction that the jury could find that Defendant had only entered into a single agreement to commit three crimes – rather than three separate agreements – in which case, Defendant might have only been convicted of a single conspiracy. We note that we have ordered the judgment with respect to one of Defendant's three conspiracy convictions arrested based on our holding in Section I of this opinion. However, even with respect to the two remaining conspiracy convictions, we disagree with Defendant's argument.

A trial court is required to instruct "on every substantive feature of the case, even in the absence of a request for such an instruction[;]" however, "the trial court need not instruct the jury with any greater particularity than is necessary to enable the jury to apply the law to the substantive features of the case arising on the evidence when . . . the defendant makes no request for additional instructions." *State v. Atkinson*, 39 N.C. App. 575, 581, 251 S.E.2d 677, 682 (1979) (citations omitted). "A substantive feature of a case is any component thereof which is essential to the resolution of the facts in

issue[;] [e]vidence which does not relate to the elements of the crime itself or the defendant's criminal responsibility therefore are subordinate features of the case." *Id.* (citations omitted).

In this case, Defendant's proposed instruction on appeal, that the jury had the "option of finding that the [multiple conspiracy] charges [of conspiracy] constituted only one conspiracy[,]" would not have been an instruction on a "substantive feature" of the case, even had the Defendant submitted a request, or lodged an objection, at trial. *See State v. McNeill*, 346 N.C. 233, 485 S.E.2d 284 (1997) (stating that the defendant's "oral request to modify the pattern instruction" was "tantamount to a request for special instructions[,]" and holding that because the defendant "did not submit either of his proposed modifications in writing . . . it was not error for the trial court to fail to charge as requested"). Defendant did not request that the trial court give this additional instruction; rather, he contends it was plainly erroneous for the trial court not to give the instruction *ex mero motu*. We find this argument unconvincing. Here, the trial court instructed the jury on all of the substantive features of the conspiracy cases; and it was not

error, much less plain error, for the trial court to fail to instruct the jury that it had the "option of finding that the [multiple] charges [of conspiracy] constituted only one conspiracy[,]" where no request was made by Defendant for the instruction.

Alternatively, Defendant argues the instructions "violated the unanimity requirement by listing five co-conspirators in the conjunctive[.]" Specifically, in the instructions for the conspiracy charges, the trial court stated that one of the elements the State had to prove was that "Defendant and Charlotte Stough, Harley Sheerer, Tim Luker, Amanda Clawson and/or Tripp Parker entered into an agreement." Defendant argues that this conjunctive instruction deprived him of a unanimous jury verdict because some of the jurors may have believed that he conspired with one of the listed co-conspirators while other jurors may have believed that he conspired with a different co-conspirator. We addressed this identical argument in *State v. Worthington*, 84 N.C. App. 150, 159, 352 S.E.2d 695, 701, *disc. review denied*, 319 N.C. 677, 356 S.E.2d 785 (1987), and we are bound by the holding in that case on this issue.

The defendant in *Worthington* was convicted of conspiracy to sell/deliver cocaine. The verdict sheet submitted to the jury stated that the jury could find him guilty if it determined that he had conspired "with Dalton Woodrow Worthington, Sr. and/or Patricia Ann Newby . . . to sell or deliver [cocaine]." *Id.* Similar to Defendant's argument in the present case, the defendant in *Worthington* argued that the verdict sheet language deprived him of his right to a unanimous jury verdict because "there is a possibility that some jurors found a conspiracy with Worthington and others found a conspiracy with Newby." *Id.* Our Court rejected this argument, holding that "the instructions were adequate to be sure that defendant's right to a unanimous verdict was not violated." *Id.* Accordingly, Defendant's argument is overruled.

III: Double Jeopardy; Punitive Controlled Substances Tax

In Defendant's final argument on appeal, he contends the denial of his motion to dismiss on double jeopardy grounds – because the State had already exacted a criminal punishment by assessing and collecting a punitive controlled substances tax – was error. Citing *Lynn v. West*, 134 F.3d 582, 593 (4th Cir. 1998), Defendant presents this argument on appeal for preservation and to urge this Court "to reconsider the soundness

of these precedents." We are bound by the decision of a previous panel of this Court on this issue in *State v. Ballenger*, 123 N.C. App. 179, 472 S.E.2d 572 (1996), *aff'd per curiam*, 345 N.C. 626, 481 S.E.2d 84, *cert. denied*, 522 U.S. 817 (1997). Therefore, this argument must necessarily fail.

## IV. CONCLUSION

For the reasons stated above, we vacate Defendant's conviction for conspiracy to traffick in methamphetamine by manufacture and remand to the trial court to arrest judgment on this conviction only. Otherwise, we find no reversible error.

NO ERROR in part, REVERSED AND REMANDED in part.

Judge STROUD and Judge HUNTER, JR. concur.

Report per Rule 30(e).